The defendant corporation has three kinds of stock outstanding. They are a $100.00 par value first preferred six per cent. cumulative stock; a no par value second preferred cumulative stock, calling for a dividend of five dollars per share until July 1, 1940, and for six dollars per share thereafter; and a common stock of no par value.
The certificate of incorporation defines the rights, privileges and restrictions appertaining to the respective classes of stock. These, as applicable to dividends are in summary as follows: the first claim on earnings for dividend purposes belongs to the first preferred, the next claim to the second preferred, and the last to the common. Before, however, the second preferred may receive any dividends, the assets of the company must bear a specified ratio to the capital represented by the outstanding first preferred stock; and the common stock may not receive any dividends until the net equity on the basis of a consolidated balance sheet equals one hundred dollars per share for the first preferred stock and seventy-five dollars per share for the second preferred stock, plus accrued and unpaid dividends in each case. After these conditions are satisfied, dividends on the common stock may yet not be declared in any year unless the net equity for the second preferred stock shall be increased in such year by an amount equal to such common stock dividend until the net equity for the second preferred shall equal one hundred dollars per share plus cumulated dividends. Thereafter unlimited dividends may be paid on the common stock.
On liquidation the first preferred is entitled to receive its par value of one hundred dollars together with accumulated dividends before anything is paid to the second preferred or the common; next, the second preferred is entitled to receive one hundred dollars per share together with accumulated dividends; and, finally, the common stock is entitled to receive all that remains from the assets after the foregoing charges are satisfied, or, if there then be no common stock outstanding, the second preferred stock shall receive all the assets remaining after the first preferred has received its specified amount.
The common stock possesses the entire voting power, subject to the arising of voting rights in the first and second preferred stock upon the occurrence of certain specified defaults in respect of dividends. *Page 889 
The certificate of incorporation contains this provision:
"The common stock shall be subject to call and redemption as an entirety on sixty (60) days notice at the option of the corporation on the first days of January, April, July and October of any year at its book value for liquidation. But in no event shall the call price be less than $5.00 per share nor more than $100 per share. Whenever the call or redemption of Common Stock shall result in causing any default in any of the provisions relating to the rights of or restrictions upon the First Preferred and/or Second Preferred Stock, such Common Stock shall not be called for redemption unless it shall be immediately reissued at not less than the redemption price thereof or unless the consent of three-fourths in amount of the First and/or Second Preferred Stock shall have been obtained as provided in subparagraphs 11 and 12 hereof."
There are 160,354 shares of common stock outstanding, of which 300 shares are held in the company's treasury.
The common stock is held largely by persons interested in the tanning industry. The. complainant is a holder of common stock who is not a tanner. There are about two hundred so-called non-tanners holding common stock. They hold a total of not less than forty-one thousand shares. The remaining common shares are held by persons engaged in the tanning business.
The company desires its control to remain with persons engaged in that business. As the company's business is that of buying and selling cattle, calf and other animal hair and of manufacturing and selling products made from such hair, such as carpet and rug cushions, accoustic felt and insulating felts of various types, the directors and officers of the company entertain the very definite view that the control of the company should be in the hands of tanners, from whom its supply of animal hair is secured. The common stock which, in case the company prospers, furnishes the key to that control, has to the extent above indicated gotten into the hands of non-tanner holders. If common shares continue to drift into the possession of people outside the tanning industry, the management foresees the day when control might rest with the so-called outsiders.
In order to forestall this possibility, the company has by formal corporate action decided to exercise the power conferred upon it by its charter (quoted supra) to call and redeem all of its outstanding common stock at the minimum call price of five dollars per share. It asserts that the book value of the stock is less per share than the call price. The complainant asserts it to be more
Inasmuch as the call and redemption will result in causing the sort of defaults as are referred to in the charter, the company purposes immediately to re-issue all the stock called (excepting of course the three hundred treasury shares) at the price of five dollars, as the charter requires.
Contemporaneously with the adoption of the resolution of redemption, indeed as a constituent part thereof, direction to re-issue the stock in the identical amount called was given in the following language.
"Be it further resolved that said common stock so called for redemption as aforesaid be immediately re-issued at $5.00 per share to tanners who hold common stock in this company and are selling hair thereto to the extent that they will subscribe and pay for the same. The remainder of the stock shall be immediately reissued at $5.00 per share to such officers, directors and persons closely affiliated with such tanners and officers and directors of this corporation to the extent that they will subscribe and pay for the same; provided, however, that the number of shares issued to persons affiliated with tanners, if any, shall in no event exceed the number now owned by them, and stock issued to persons other than tanners shall carry a repurchase option permitting the company to repurchase the stock on thirty (30) days' notice at the call price."
It is apparent that this operation of redeeming the stock and immediately re-issuing it to the chosen ones among the old holders, is for the sole purpose of dropping the non-tanner stockholders as associates in the enterprise. Their continued presence as stockholders is not desired. The plan is the very frank and undisguised one of indirectly compelling one group of stockholders to sell their holdings to another group of stockholders (tanners) or, to the extent the latter do not desire to purchase the holdings of their former associates, to the company's officers, directors or persons closely affiliated with such tanners, officers and directors.
Not only does the defendant admit this to be the purpose; but it justifies it, first because the welfare of the company demands it, and second, because it says such was the real reason, though not expressly *Page 890 
stated, for the presence in the charter of the redemption clause.
Now admitting for the moment that the lawful authority exists in a corporation created under the Delaware act to take a power to redeem what is familiarly known as common stock, it may be a serious question whether it can exercise such a power when the avowed purpose is simply to get rid of certain stockholders of a given class whose presence in the stockholding group is undesirable to the rest, by compelling the undesirables to sell out to the chosen ones who are permitted to stay in. This question has been suggested on the briefs, but deferred for later argument in case the question hereinafter discussed is decided against the complainant.
The solicitors for the parties have at this stage of the case directed their discussions not to the question of an inequitable exercise of lawful power, but rather to the question of the existence of the power under the statute.
1. The complainant denies and the defendant affirms that there is authority under the Delaware act whereby a corporation may be empowered to redeem the common stock. The question of law thus presented is the one to which the briefs are directed. It is the principal one to which I address my attention in this memorandum.
The provision of the act authorizing the redemption of stock is found in section 27 thereof (Rev. Code 1935, § 2059). The language is — "Whenever any corporation organized under this Chapter shall have issued any preferred or special shares it may, subject to the provisions of its certificate of Incorporation, * * * redeem all or any part of such shares." (Italics mine.)
The defendant concedes that there is no authority anywhere in the act for the call and redemption of common stock. Stock which is lawfully subject to redemption must be what the act calls "preferred or special stock." Therefore, in the instant case, the stock which is sought to be redeemed and which the charter calls common stock, must in spite of the connotation of its given name, be considered as in fact a preferred stock or a special stock, if it is within the redemption section of the act.
[1] The term "preferred stock" is of fairly definite import. There is no difficulty in understanding its general concept. It is of course a stock which in relation to other classes enjoys certain defined rights and privileges. These rights and privileges are generally associated with specified dividend and liquidation priorities. The defendant makes no contention that the stock called "common stock" by its charter can in any sense of the word be regarded as a preferred stock.
The contention on the part of the defendant is that its common stock is, however a special stock within the meaning of section 27 of the act. Originally the act contained no reference to "special stock". That phrase appears to have been introduced into the law in 1927 (chapter 85), when it was placed with the disjunctive "or" after "preferred stock" as it is now found in sections 13 and 27 of the act (Rev. Code 1935, §§ 2045, 2059). It would be rather hazardous to undertake to frame a precise definition of "special stock." I am advised of only one instance where "special stock" has been used in the statutory law elsewhere. That was in the Massachusetts Act of 1855, c. 290. But there the statute indicated its precise definition. See American Tube-Works v. Boston Machine Co., 139 Mass. 5, 29 N.E. 63. In this State the only source of definition given by the statute is in the language of section 13 (Rev. Code 1935, § 2045) where, speaking indifferently of both "preferred or special stock" the statute in general terms says it may be issued "with such designations, preferences and relative, participating, optional or other special rights, * * * as shall be stated and expressed in the Certificate of Incorporation," etc. There is, so far as I am advised, no decisional law anywhere defining the term "special stock,"
It would seem that we must look to the general language of the statute, just quoted, for aid in answering the question whether or not a given stock may be a type of special stock. The complainant takes the view that special stock is synonymous with preferred stock. If so, it is difficult to understand why "special stock" was introduced into the act in 1927 in the immediate context with "preferred stock" which was already there. Why add the phrase if nothing new was intended? It may have been added out of an abundance of precaution — to make sure that special rights such as were "participating and optional" for instance, which might be argued as not typically belonging to a stock called preferred, would nevertheless be clearly appropriate to a stock called special and so give to such stock the desired redeemable character.
[2] Whether this be the reason for the amendment which introduced "special *Page 891 
stock," I do not pretend to say. It is not necessary for the purposes of this case to attempt any definition of the distinction which differentiates preferred stock from special stock. The question here of whether the common stock is in reality a special stock, in spite of its given name, may be answered by asking what preferences and relative, participating, optional or other special rights does it possess which make of it a special stock. In examining the charter of the defendant I cannot find where anything in the nature of a preference or a relative, participating, optional or other special right is given to the stock called common stock. This is so unless the right of the common stock to exercise the exclusive voting power, in the absence of certain specified defaults, can be said to constitute a preference or relative, participating, optional or other special right within the meaning of the act. It is not of course a participating or optional right. I am of the opinion that a favored voting position which the charter gives to a stock is not such a preference or relative or special right as the statute contemplates.
The statute recognizes that preferred, special and common stocks may be created. Section 14 (Rev. Code 1935, § 2046). It nowhere defines common stock. Section 13 (Rev. Code 1935, § 2045) however, does appear to define by general descriptive language the terms preferred and special stocks. Now in determining whether favored voting rights may be regarded as embraced within that general descriptive language, viz., within "preferences and relative, participating, optional or other special rights" — it is of significance to observe other language in section 13 which precedes that just quoted. The other language is found at the outset of the section. I quote it along with the language already quoted, describing the preferred and special stock which may be issued, placing in italics the latter wherever the same may occur.
"Every corporation shall have power to issue one or more classes of stock * * * with such voting powers, full or limited, or without voting powers and in such series and with such designations, preferences andrelative, participating, optional or other special rights * * * as shallbe stated and expressed in the Certificate of Incorporation. * * *Any preferred or special stock may be made subject to redemption at such time or times and at such price or prices and may be issued in suchseries, with such designations, preferences and relative, participating,optional or other special rights * * * as shall be stated and expressedin the Certificate of Incorporation."
It is to be noted that when the italicized words were first used in the paragraph they are in association with voting powers. But when they are used at the later point in the paragraph where the features of preferred and special stock are described, they are not found in company with language referring to voting powers.
From this examination of the section, I think the conclusion is inescapable that special powers with respect to voting are not to be catalogued with "preferences and relative, participating, optional or other special rights," which the section says may be attached to preferred or special stock.
[3] The solicitors for the defendant argue that the various restrictions placed upon the common stock's right to enjoy dividends, its subordinate position on the distribution of assets upon liquidation and its liability to a shifting of voting power in certain contingencies, are features which give to the common stock the essential status of a special stock. A sufficient answer to this contention is that the features referred to speak of burdens, while the distinguishing characteristic of preferred or special stock speaks of rights or favors in relation to other stock.
[4] 2. It is further contended that if the proceedings heretofore taken are not permissible as a redemptive operation under section27 (Rev. Code 1935, § 2059), they are nevertheless permissible under section 28 (Rev. Code 1935, § 2060) as proceedings taken in reduction of capital.
Section 28 requires the action of the directors looking to a reduction of capital to be supplemented by resolution of the holders of a majority of the stock having voting power. While such a supplementing resolution was adopted in this case, yet it is plain that the reduction of capital mentioned in the resolution was a reduction that was to be consequent upon the redemption operation under section 27. It was not an independent capital reduction to be effectuated under section 28. But the plain truth is there was never any purpose to effect a reduction of capital. To be sure, some words to that effect were employed. They were mere words. In view of the perfectly clear intent immediately to bring the capital back to its original level — to do *Page 892 
this as nearly as possible upon the very instant of the reduction — it is impossible to regard the proceedings as a bona fide operation under section 28. Furthermore, it is to be observed that what the corporation proposes (looking at the matter for the moment as one of reduction of capital under section 28) is in effect to reduce capital by retiring the shares held by some of the class of common stockholders, viz., by the non-tanner stockholders and immediately reissuing the same to others, while the remaining stockholders are allowed in effect to keep their shares. This is what the eye sees when it looks behind the masque of words and gestures and discovers the face of the true intent. Now where the purpose is to reduce capital by retiring a part of the shares of a given class, section 28 requires that those stockholders whose shares are to contribute to the capital reduction must be determined by lot. There is no similar express provision against discrimination among the stockholders where a redemption proceeding is conducted under section 27. Impartial chance, and not the favor or disfavor as the case may be of the directors, is designated by section 28 as the arbiter of the question of who shall surrender and who shall keep his shares. If then the action proposed to be effectuated in this case be referred to section 28 for its justification, it seems clear that the plain protection of the statute against discrimination among the stockholders has been ignored.
Examining further the contention that the proposed corporate action is permissible under section 28 as in reduction of capital, and assuming that the proposed reduction is bona fide and not merely pretended as the view just stated regards it, then another and very serious question would arise. This question would occur by reason of the fact that as appears from the balance sheet of July 31, 1936, which is the nearest in point of time to the date when the proceedings were taken, there were no assets attributable to the common stock, after the liquidation values of the outstanding first and second preferred stocks were provided for. The net worth of the company lacked $145,379.49 to cover the full liquidation values of the preferred stocks. In face of that situation, it may well be questioned whether the power to reduce capital could be exercised by disbursing from the assets five dollars per share for 160,054 shares of junior common stock ($800,270.00). Whether or not it could be, however, it is not necessary for the disposal of the pending application to decide.
The preliminary injunction should issue.
 *Page 18