HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Complainant Below, Appellant,

*vs.*

W. S. DICKEY CLAY MANUFACTURING COMPANY,
Defendant Below, Appellee.

*Supreme Court, On Appeal, January 20, 1942.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, JJ., sitting.

*Stewart Lynch,* (*Manning W. Heard,* of Hartford,

Conn., and *Daniel L. Herrmann* and *Collins J. Seitz*, of counsel), for appellant.

*William S. Potter,* (*Winger, Reeder & Barker,* of Kansas City, Mo., and *Southerland, Berl, Potter & Leahy,* of counsel), for appellee.

LAYTON, Chief Justice, delivering the opinion of the court:

The complainant in the court below sought to enjoin the consummation of an amendment to the charter of the respondent company, a Delaware corporation, by which the number of authorized shares of a class of stock would be increased. It was prayed, *inter alia*, that the proposed amendment be declared void, either in general, or as to the complainant and all other holders of common shares similarly situated; and that the filing and recording of the certificate of amendment in the proper State and County offices be enjoined. A demurrer to the bill of complaint was sustained (*ante p.* 16, 21 A. 2d 178); the complainant elected to take final judgment; and from a decree dismissing the bill this appeal was taken.

Prior to January 10, 1940, the appellee's authorized capital stock was as follows:

260,000 shares of no par value preferred stock entitled to a non-cumulative dividend of $1.00 a year out of the net profits, subject to redemption at $17.50 a share plus any declared and unpaid dividends thereon, and, on liquidation, entitled to $15.00 a share. The amended charter provided that if in any year a dividend on the preferred stock "shall be declared by the Board of Directors, and such dividend shall not be declared payable in cash, either wholly or in part, then any difference between the amount declared payable in cash and a dividend of One ($1.00) Dollar per share upon outstanding preferred stock shall be declared

and paid in Class A stock of the corporation to be issued at par";

500,000 shares of Class A stock of the par value of $1.00, entitled to an annual six percent cumulative dividend, redeemable at par plus all accrued and unpaid dividends, but subject to the prior rights of the preferred stock.

195,000 shares of no par value common stock, entitled to receive no dividends until the preferred stock had received $1.00 a share for two consecutive years, and not until the Class A stock had been retired.

On January 10, 1940, there were issued and outstanding 211,775 shares of preferred stock, 422,995 shares of Class A stock and 51,806 shares of common stock. Of these issues, the complainant held and owned 25 shares of the preferred, 20 shares of the Class A, and 35,890 shares of the common stock.

Under the appellee's charter voting rights were vested exclusively in the preferred and common shares, except upon certain specified dividend defaults, in the event of and during the continuance of which voting rights were conferred on the Class A shares.

On November 17, 1939, the appellee's directors, by resolution, recommended the adoption of an amendment to the corporate charter increasing the number of Class A shares to 1,000,000, the amendment to be submitted to a stockholders' meeting to be held on January 10, 1940. Notice was sent to the stockholders, in which the purposes of the meeting were stated to be the election of directors and the consideration of the proposed amendment. Accompanying the notice was a long letter setting out the financial position of the company, and offering reasons why it would be to the advantage of the preferred and Class A shareholders to vote for the proposed increase of Class A stock. It was pointed out that the primary purpose of the enterprise was the distribution of earnings to the stockholders, and in viewing the problem, two considerations, it was said, must

be observed, the maintenance and stability of the enterprise, and the distribution of earnings in so far as earnings could be made available; that the present indications were that the cash payment on the preferred dividend could be increased for the fiscal year, but that it would still be necessary to use Class A stock to make up the difference; that only 77,005 shares of Class A stock remained in the treasury, which was too narrow a margin for safety in securing the position of preferred and Class A stockholders; and that it was to the interest of those shareholders to vote for the proposed increase of Class A stock.

At the stockholders' meeting it was demanded on behalf of the complainant that the common shares be voted separately on the proposed amendment. It was ruled, however, that the vote be taken in two classes, the Class A shares as one class, the preferred and common shares the other class. Voting in this way, 352,261½ Class A shares were cast in favor of the amendment, and only 20 of these shares were voted against it; of the preferred and common shares voting together, 183,325 shares were voted in favor of the amendment, and 36,890 shares, more than a majority of the common shares, were voted against the amendment.

The appellant contends that under *Section* 26 *of the General Corporation Law* (2058, *Rev. Code,* 1935) the affirmative vote of a majority of the common shares, voting as a separate class, was required to adopt the proposed amendment; apart from this, that the amendment was unfair, inequitable and fraudulent as to common shareholders; and that the amendment violated the due process clause of the Delaware *Constitution,* the due process clause of the 14th *Amendment to the Federal Constitution,* and the contract clause of the latter *Constitution,* Art. 1, § 10.

Amendments to certificates of incorporation are authorized by *Section* 26 of the *General Corporation Law.* The first paragraph of the section defines the field of charter amendment. Corporate powers and purposes may be in-

creased or diminished, substitutions of powers and purposes may be accomplished, the corporate title may be changed, and, in general, any other desired change or alteration may be made. Specifically, authorized capital stock may be increased, decreased or reclassified "by changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares, or the qualifications, limitations or restrictions of such rights * * *".

The introductory paragraph is followed by a paragraph numbered (1) relating to corporations having capital stock. The mechanics of amendment are provided, and the several required steps having been taken, it is declared that the certificate of incorporation shall be deemed to be amended, provided however, "that if any such proposed amendment would alter or change the preferences, special rights or powers given to any one or more classes of stock, by the Certificate of Incorporation, so as to affect such class or classes of stock adversely, or would increase or decrease the amount of the authorized stock of such class or classes of stock, or would increase or decrease the par value thereof, then the holders of the stock of each class of stock so affected by the amendment shall be entitled to vote as a class upon such amendment, whether by the terms of the Certificate of Incorporation such class be entitled to vote or not; and the affirmative vote of a majority in interest of each such class of stock so affected by the amendment shall be necessary to the adoption thereof, in addition to the affirmative vote of a majority of all other stock entitled to vote thereon."

An affirmative vote of a majority of the preferred and common shares, considered as one class for voting purposes, was necessary to the adoption of the amendment. This affirmative vote was obtained, and was all that was required unless, as it is asserted by the appellant, an affirmative vote of a majority of the common shares, voting separately as a class, was necessary.

The appellant's argument is this: In the field of permissible charter amendment are those amendments which would change "relative, participating, optional, or other special rights of the shares"; by ordinary rules of grammatical construction, the use of the phrase "other special rights", following the designation of "relative" among other special rights, embraces and defines a relative right as a special right; a class vote is required in all cases where the proposed amendment would alter special rights given to a class of stock so as to affect adversely that class; the common shares have certain special rights, to-wit, their relative position in the capital structure, their right to dividends, and to a share of the corporate assets upon dissolution or in liquidation, and the right to vote; the proposed amendment would affect adversely the common shares in respect of these special rights; and, therefore, an affirmative vote of a majority of the common shares, voting separately as a class, was necessary to the adoption of the amendment.

Obviously, the relative position of the common shares will be altered by the proposed amendment. By force of the amendment the burden on the common shares will be increased to the extent of 500,000 additional Class A shares, if issued. In this way and to this extent the common shares would be affected adversely.

The statute, in listing the amendable rights, or rights and powers, attached to stock, first speaks of preferences. It then speaks of rights, and employs specific descriptive words, followed by the general and embracive words, "other special". Whatever may be said with respect to the necessity for the use of the word "special", as applied to a right attached to stock, in view of the prior descriptive words, it is clear enough that the word was used in the sense of shares having some unusual or superior quality not possessed by another class of shares. In this sense a relative right is a special right. But the relative position of one class of shares in the scheme of capitalization is not to be confused

with rights incident to that class as compared with other classes of shares. Where the corporate amendment does no more than to increase the number of the shares of a preferred or superior class, the relative position of subordinated shares is changed in the sense that they are subjected to a greater burden. The peculiar, or special, quality with which they are endowed, and which serves to distinguish them from shares of another class, remains the same.

In *Starring v. American Hair & Felt Corporation*, 21 *Del. Ch.* 380, 191 *A.* 887, *affirmed* 21 *Del. Ch.* 431, 2 *A.* 2d 249, the matter in dispute was whether the common stock of the respondent company could be redeemed, or retired, under *Section 27 of the General Corporation Law* (2059, *Rev. Code*, 1935) providing for the retirement of preferred or special shares. Clearly this could not be done unless incident to the common shares were rights of such nature as would put them in the category of special shares. The common shares were subordinated to first and second preferred shares in their right to dividends and in liquidation. The entire voting power was vested in the common stock subject to voting rights conferred on the preferred classes of stock in the event of certain defaults. The liability to a shifting of voting power in certain contingencies, the various restrictions placed on the right of the common shares to enjoy dividends, and their subordinate position in liquidation, were seized upon as features which gave to them the essential status of special shares. But the learned Chancellor, whose opinion we adopted, could nowhere find, upon an examination of the company's charter, that anything in the nature of a preference, or relative, participating, optional or other special right had been conferred on the common shares, unless the right of these shares to exercise the exclusive voting power in the absence of specified defaults could be said to be such a right; and he was of opinion that the favored voting position was not a preference or any special right within the meaning of the Act. He held further, that

the restrictions placed on the right of the common shares to enjoy dividends, their subordinate position in general, and their liability to a shifting of voting power, were burdens placed on the shares rather than rights or favors in relation to other stock which are the distinguishing characteristics of preferred or special stock. The appellant points out that the Chancellor nowhere indicated that *Section* 26 *of the Corporation Law* was involved; and, generally, the effect of the decision is waived aside by saying that a different section of the law was under consideration. This is superficial. The statute must be read and considered in its entirety. By *Section* 13 (2045, *Rev. Code*, 1935) every corporation is empowered to issue one or more classes of stock "with such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof" as shall be stated in the certificate of incorporation. This precise language is carried into the introductory paragraph of *Section* 26. The Chancellor, in his effort to discover, if possible, the meaning of "special" shares, was compelled to refer, and did refer, to the language of *Section* 13 authorizing the issuance of various kinds or classes of shares. His discussion of the language of this section and his conclusions thereupon are particularly apposite here.

For some reason, not readily discoverable, the appellant relies on *Maddock v. Vorclone Corporation*, 17 *Del. Ch.* 39, 147 *A*. 255. There the complainants owned 9,970 of 50,000 shares of voting common stock vested with the right to vote cumulatively at elections for directors. The board of directors consisted of five; and the complainants, therefore, could effect the election of one director by cumulative voting and thereby obtain minority representation. The corporation proposed, by corporate amendment, to deprive the common shares of this right. The Chancellor, properly, characterized the right as a special right of the common shares, but susceptible, nevertheless, to alteration under *Section* 26 of

the law. In the course of his opinion he remarked that the right of the majority to elect directors by the system of straight voting is just as much a right while it continues as is the right to elect by cumulative voting; but he did not refer to the ordinary right of straight voting as a special right, nor can any inference of such view be drawn from his language. *Section* 17 *of the General Corporation Law* (2049, *Rev. Code,* 1935) declares that unless otherwise provided in the certificate of Incorporation, each stockholder shall, at every meeting of stockholders, be entitled to one vote for each share of the capital stock held by him. This is declaratory of a general, not a special right.

*Section* 26 confers broad powers of amendment upon an affirmative vote of a majority of shares having general voting power. Such affirmative vote is always necessary to the adoption of an amendment. Protection afforded by a class vote against the effects of amendment is, however, restricted to three situations. Where the proposed amendment would alter or change preferences, or special rights or powers, given to a class of shares so as to affect adversely the class, the holders of the shares of that class are entitled to vote on the amendment separately as a class, and a majority of the shares of the class must vote in approval of the amendment. Where the proposed amendment would increase or decrease the amount of the authorized stock of a class, a class vote is required, and a majority of the shares of the class must consent. Where the proposed amendment would increase or decrease the par value of a class of shares, an affirmative vote of a majority in interest of the class is necessary to the adoption of the amendment.

Stripping from the appellant's argument its garnishments, it is found to be based on the misconception that a position of a class of shares, as related to other shares in the capital structure, is a relative and, therefore, a special right of the shares. Essentially, the contention is that protection by class vote against an increase of burden is a

special right incident to the common shares. If the Legislature had intended to afford protection against the effects of an amendment generally by requiring a class vote of shares in all cases where, by the amendment, the relative position of shares would be disturbed, as by an increase of subordination, apt language easily could have been found. But it is entirely clear that the statute in its mention of relative rights of shares did not refer to the position of shares in the plan of capitalization, but to the quality possessed by the shares; and it is only by a refinement of interpretation that it can be said that a relative position is a relative right.

The purpose of all canons of construction or interpretation is to discover the true intent of the law. They are useful only in cases of doubt; and where the language of a statute is plain, and conveys a clear and definite meaning, construction is forbidden, even though other meanings could be found. In such case the court will accept the language as it finds it. It will not exercise its imagination in an effort to discover some obscure, uncertain or merely possible meaning, but will give to the language the meaning clearly demanded by it.

It is, of course, arguable that protection should be given against an increase of burden by requiring an affirmative class vote of a majority of the shares called upon to bear the load; but this is a field of public policy and economy upon which the courts, under the appearance of construction, ought not to trespass.

After construing the provisional language of *Section* 26 requiring in certain cases a class vote of shares, the Chancellor [*ante p*. 24, 21 *A*. 2*d* 181] observed that "the more specific provisions of the second phrase necessarily control this case." That phrase relates to an amendment increasing or decreasing the authorized stock of a class. The appellant distorts the Chancellor's interpretation to one meaning, that whenever an amendment would increase or

decrease the amount of the authorized stock of one class, the first phrase of the proviso becomes impotent even though the effect of the amendment would be to change every pre-ference, special right and power of a subordinate class of stock to the point of destruction of every vestige of its value. This criticism is without warrant. The Chancellor's language is not susceptible to the construction put upon it. He dealt with the situation as he saw it, not as the appellant would have it. In his view the proposed amendment did not alter preferences, or any special right or power of the common shares. Certainly it did not increase or decrease the par value of shares. The purpose of the amendment, and its sole effect, was to increase the amount of authorized Class A stock. The second phrase of the proviso necessarily controlled for the reason that the proposed amendment was not concerned with the subject matter of either the first or the third phrase.

The appellant, also, contends that the amendment is unfair, inequitable and fraudulent as to common sharehold-ers for the reason that the majority intended to exercise the power of amendment for their sole benefit; and that apart from the question of contractual rights the amendment should be condemned.

As we view the issues presented by the bill of complaint it is unnecessary to analyze the elaborate argument sub-mitted by the appellant. The question before the Chancellor was, as he said, one of pleading, not of proof. The com-plainant sought only to prevent the accomplishment of the amendment. No other unfair action was alleged to be im-minent. In the circumstances shown, the Chancellor did not err in refusing relief. The appellee was within its right in seeking an increase of the authorized Class A stock. The threatened injury, if any, to the common shares did not arise from the mere authorization except in a remote sense. It is only when the additional Class A shares are issued, or are about to be issued, that it can be said that an unfair

benefit will accrue to the preferred shares with resulting injury to the holders of common shares. The appellant assumes that the explanatory letter to the stockholders is proof of an immutable purpose to issue additional Class A shares for dividend purposes. But this purpose, however strongly implied, may be renounced. The additional Class A shares may never be issued, or they may be issued for cash. The danger was not sufficiently imminent to warrant injunctive relief. The appellant's action was precipitate.

Finally, the appellant contends that if *Section* 26 is to be construed as not requiring a class vote of common shares on amendments to charters increasing the number of shares of a class of stock with senior or preferred rights, preferences or powers, then the section is unconstitutional within the contract clause of the *Federal Constitution, Art.* 1, § 10; within the due process clause of that *Constitution, 14th Amendment;* and within the due process clause of the *Constitution* of this State, Art. I, § 9.

The contractual rights of the common shares will be examined in the light of the later history of the corporation. In 1927, its authorized capital stock was 50,000 shares of preferred and 75,000 shares of common stock. In 1931, the corporation went into receivership and was subsequently reorganized under *Section* 77B *of the Federal Bankruptcy Act,* 11 *U. S. C. A.* § 207. To consummate the approved plan of reorganization, the company's charter was amended, and its authorized capital was established as follows: 260,-000 shares of no par value, non-cumulative preferred stock, entitled to receive out of net profits an annual dividend of $1.00 a share; and 195,000 shares of no par value common stock, entitled to receive no dividend until the dividends on the preferred stock had been paid for two consecutive years. The preferred shares were issued to bondholders. The common stock represents former preferred stock which upon the completion of the reorganization had a stated value of only $518.06. All of the capital stock was issued and placed

in a voting trust, and voting trust certificates were issued to the beneficial owners of the stock. In the amended bill of complaint it was alleged that voting trust certificates were issued to the complainant's predecessors in title, which certificates were subsequently transferred to the complainant in March, 1935. While the voting trust agreement was in effect the appellant, as owner of the beneficial interest of a majority of the common shares, was asked to express an opinion as to the dividend policy of the company, and its opinion was that a conservative policy should be pursued, and the company's cash conserved until a sustained earning power had been shown. The board of directors, however, in October, 1937, adopted a resolution declaring a dividend of $1.00 a share on the preferred stock, twenty-five cents of which to be paid in cash, the remainder in common stock issued at $6.25 a share. The appellant company protested; the resolution was rescinded; and thereafter a new resolution was adopted recommending the present capital structure. It does not appear that the appellant made any objection to the plan either to the voting trustees or to the management; and the somewhat unusual provision with respect to the payment of dividends on the preferred shares in the form of Class A shares had, at least, the appellant's tacit approval. Further the bill alleged that in 1937 a dividend of $1.00 a share payable one half in cash and one half in Class A stock, was declared and paid on the preferred shares; and that in 1938 a like dividend on the preferred was declared and paid in cash to the amount of thirty cents the remainder in Class A stock. There seems to have been no objection made to the payment of these dividends.

The basis of the appellant's argument, again, is that the charter, as it existed at the time of the amendment under attack, conferred on the common stock the right, contractual in nature, to maintain its relative position in the capital structure, unless a majority of the common shares, voting separately as a class, consent to the proposed change. But

there is impliedly written into every corporate charter as a constituent part thereof the pertinent provisions of the State Constitution and statutes. Specifically, *Section* 83 *of the Corporation Law* (2115, *Rev. Code,* 1935) declares that all amendments to the law shall be a part of the charter of every corporation formed under it except in so far as they are inapplicable or inappropriate to the objects of such corporation. Regarding the charter as a contract, it has such status as between the State and the corporation, as between the corporation and its shareholders, and, in some respects, as between the shareholders among themselves. The contract rights of the shareholders, in the sense of interrelations *inter sese,* do not rest upon an unchangeable base, but are subject to alteration under the amendatory provisions of the general law. The power of amendment, as it affects the rights of shareholders, is broad, but it has limitations. As to what those limitations are judicial authority is unsettled. Certainly vested property rights may not be destroyed or impaired. *Keller v. Wilson & Co.,* 21 *Del. Ch.* 391, 190 *A.* 115. But every decision in this State has upheld the general right of the corporation to affect the position of an existing class of stock by the creation of a class or classes having preferred rights or superior positions. *Morris v. American Public Utilities Co.,* 14 *Del. Ch.* 136, 122 *A.* 696, so holds, and upon this question the decision has been repeatedly approved by this court. *Penington v. Commonwealth Hotel Construction Corp.,* 17 *Del. Ch.* 394, 155 *A.* 514, 75 *A. L. R.* 1136; *Keller v. Wilson & Co., supra; Shanik v. White Sewing Machine Corp.,* 25 *Del. Ch.* 371, 19 *A.* 2d 831. An increase of the number of shares of an existing superior class of shares, is, of course, within the same principle.

The shareholders of the appellee company agreed that classes of stock might be increased in amount, for that was the law and it was written by implication into the charter. They agreed expressly that the preferred and common

shares, considered as one body of shares, should have the exclusive voting power except in the case of specified defaults. The power to amend and the method of exercising the power are parts of the contract. *Section* 10 *of Article* 1 *of the Federal Constitution* does not apply. *Phillips Petroleum Co. v. Jenkins,* 297 *U. S.* 629, 56 *S. Ct.* 611, 80 *L. Ed.* 943.

The right of veto by class vote was never conferred on the common shares, and this is not at all surprising in view of their origin. What the appellant would have the court to do is to reconstruct the contract by giving to the common shares a right never intended to be given.

No question of due process of law is suggested by the record.

The decree of the court below. is sustained.