**James I. SHANKEN, Appellant,**

v.

**LEE WOLFMAN, INC., et al., Appellees.**

**No. 14174.**

Court of Civil Appeals of Texas.

Houston.

July 11, 1963.

Rehearing Denied Sept. 12, 1963.

Liddell, Austin, Dawson & Sapp, W. Robert Brown, Houston, for appellant.

L. Keith Simmer, Alton F. Curry, Houston, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellees.

WERLEIN, Justice.

Appellant, James I. Shanken, individually and as a representative and registered shareholder of Lee Wolfman, Inc., which merchandizes ladies' ready-to-wear from its store on Kirby Drive in Houston under the name of "Wolfman's," brought this suit against Lee Wolfman and wife, Margaret Wolfman, Charles Ford and wife, Irene Ford, sometimes referred to collectively as individual appellees, Wolfman's Inc.— Spring Branch, sometimes referred to as the "Spring Branch store," and Wolfman's Inc. This appeal is from a summary judgment granted appellees.

Appellant alleged that he filed his petition as a representative and shareholder of Lee Wolfman, Inc., as a shareholder's derivative action in favor of Lee Wolfman, Inc. and its stockholders in a same and similar position as appellant; that Lee Wolfman, Inc. had failed and refused to institute suit in behalf of itself to protect its corporate property and save same from damage

or loss; that Lee Wolfman is the president, chairman of the Board of Directors, and the owner of all of Class A common stock in Lee Wolfman, Inc., and that Margaret Wolfman and Irene Ford are both officers and directors and shareholders of Lee Wolfman, Inc. and that said parties are also officers, directors and incorporators of Wolfman's, Inc.—Spring Branch; that appellant, who owns all of Class C common stock in Lee Wolfman, Inc., has been since on or about April 2, 1958 vice president and a director of said corporation, but he has no connection with Wolfman's, Inc.— Spring Branch, and had no knowledge of the organization or existence of such company until after its incorporation.

The judgment of the court, granting the summary judgment, recites among other things: " * * * and the Court having considered the pleadings, the depositions on file, and the affidavit attached to the amended motion for summary judgment, and there being no controverting affidavits filed on behalf of Plaintiff * * * " Although the court considered the depositions on file as well as the pleadings and the affidavit attached to the amended motion for summary judgment, appellant has failed to file in this Court a statement of facts. Therefore, we must presume in support of

the judgment that the evidence was such as to show the trial court that there was no genuine dispute as to any material fact issues. Box v. Bates, 162 Tex. 184, 346 S.W.2d 317 (1961); Reese v. Davitte, Tex. Civ.App., 255 S.W.2d 1015, writ dism.; Root v. Hester, Tex.Civ.App., 309 S.W.2d 480, error ref. This appeal, therefore, is limited to a consideration of appellant's first Point asserting that the trial court erred in granting appellees' motion for summary judgment because the purported charter amendment, stock increase and purchase of the Spring Branch store stock by Lee Wolfman, Inc. is invalid under the Texas Business Corporation Act and under the articles of incorporation of Lee Wolfman, Inc. In order to pass upon appellant's contention, it is necessary to relate briefly the undisputed facts upon which his claim is based.

Lee Wolfman, Inc. was incorporated under the laws of the State of Texas on March 10, 1958. At the organization meeting of the Board of Directors of the company on March 14, 1958 Lee Wolfman was elected president, appellant was elected vice president, Irene Ford was elected secretary, and Charles Ford treasurer, and three of the incorporators and appellant were elected directors. The corporate stock was authorized and issued as follows:

| Owner | Class | Authorized | Issued | Par |
|-------|-------|------------|--------|-----|
| Lee Wolfman | A common | 150 | 100 | $100.00 |
| Irene Ford | B common | 150 | 100 | 100.00 |
| James Shanken | C common | 150 | 100 | 100.00 |
| Cumulative preferred | | 550 | –0– | 100.00 |

Appellant alleged that in December, 1961 the individual appellees without his knowledge opened a store in the Spring Branch area of Houston under a separate corporation named "Wolfman's, Inc.—Spring Branch" and that neither appellant individually nor Lee Wolfman, Inc. had any stock in said branch store which the individual appellees operated under the name "Wolfman's" without the prior consent or ap-

proval of appellant or Lee Wolfman, Inc.; that such action was a gross breach of their fiduciary duty to Lee Wolfman, Inc. and its stockholders; that on May 10, 1962 appellant demanded at a meeting of the Board of Directors of Lee Wolfman, Inc. that an investigation be made of Wolfman's Inc.— Spring Branch for the purpose of determining whether action should be taken on behalf of the shareholders of Lee Wolfman,

Inc. to protect such shareholders against unfair competition or use of the name and good will of Lee Wolfman, Inc. in the operation of Wolfman's, Inc.—Spring Branch.

Thereafter on May 24, 1962 action was taken by the directors of Lee Wolfman, Inc. to acquire all of the stock of the Spring Branch store. The stated purpose of such stock acquisition was to make the Spring Branch store a wholly owned subsidiary of Lee Wolfman, Inc. A pro rata increase of each class of the corporation's common stock was proposed, and a resolution adopted, later to be submitted to the shareholders, by a vote of three directors to one director, appellant opposing, to amend the charter of Lee Wolfman, Inc. so as to increase the aggregate number of shares authorized to be issued to 250 shares in each class of common stock, and to issue such stock pro rata; or, in the alternative, if that resolution should not pass, to increase the aggregate number of shares of the corporation from 1,000 shares to 1350 shares by increasing to 325 shares both Class A and Class B stock. These resolutions to amend the company's charter were submitted to a vote of the shareholders at a special meeting on June 4, 1962. Appellant voted his Class C stock against the pro rata amendment, thus making it impossible for the remaining stockholders to increase his class of stock against his will. Thereafter the amendment was adopted to authorize and issue an increase in Class A and Class B stock by 175 shares each. Appellant voted against the adoption of such resolution, which carried, however, by a two-thirds vote including the affirmative vote of all of Class A and Class B stock.

On or about June 21, 1962 the charter of Lee Wolfman, Inc. was accordingly amended increasing the number of authorized shares of both Class A and Class B stock to 325 shares and leaving appellant's Class C stock at 150 shares. Appellant brought this suit on June 26, 1962, praying for damages, an injunction, declaratory judgment, attorney's fees, and that the action of the shareholders at said special meeting of June 4, 1962 be declared void and of no force or effect.

■ Appellant contends that under the Texas Business Corporation Act, and particularly the provisions concerning amendments of the articles of incorporation, the charter amendment attempted by appellees required the affirmative vote of two-thirds of all the issued stock of Lee Wolfman, Inc. and in addition thereto the affirmative vote of two-thirds of each class of stock, voting separately as a class. Two-thirds of the total shares voted in favor of the charter amendment but two-thirds of each class did not approve the amendment since appellant voted his Class C stock against the amendment.

Article 4.02, Texas Business Corporation Act, V.A.T.S., provides as follows:

"A. The articles of incorporation may be amended in the following manner:

\* \* \* \* \* \*

"(3) At such meeting a vote of the shareholders entitled to vote thereon shall be taken on the proposed amendment. The proposed amendment shall be adopted upon receiving the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote thereon, unless any class of shares is entitled to vote thereon as a class, in which event the proposed amendment shall be adopted upon receiving the affirmative vote of the holders of at least two-thirds of the shares within each class of outstanding shares entitled to vote thereon as a class and of at least two-thirds of the total outstanding shares entitled to vote thereon."

Article 4.03 of the Act defines class voting on amendments as follows:

"A. The holders of the outstanding shares of any class entitled to vote upon a proposed amendment by the provisions of the articles of incorporation shall be entitled to vote as a class there-

on if the amendment would change the shares of any class having a par value into the same or a different number of shares without par value, or would change the shares of any class without par value into the same or a different number of shares having a par value, or would change the shares of any class, whether with or without par value, into a different number of shares of the same class.

"B. The holders of the outstanding shares of a class shall be entitled to vote as a class upon a proposed amendment, whether or not entitled to vote thereon by the provisions of the articles of incorporation, if the amendment would:

"(1) Increase or decrease the aggregate number of authorized shares of such class.

\*   \*   \*   \*   \*   \*

"(5) Change the designations, preferences, limitations, or relative rights of the shares of such class."

Appellant contends that under the foregoing articles, if any class of stock is entitled to vote upon a proposed charter amendment *as a class,* then the proposed amendment must receive the affirmative vote of the holders of at least two-thirds of the shares within each class; that the holders of outstanding shares of any class of stock are entitled to vote as a class if the amendment "would change the shares of any class, whether with or without par value, into a different number of shares of the same class"; that the amendment approved by the Class A and Class B shareholders was for the specific purpose of changing the shares of A and B class stock into a different number of shares of the same class, and hence he was entitled to vote his Class C stock as a class. He further contends that he was entitled to vote his stock as a class under the provisions of Article 4.03, subd. B (5) which provides class voting privileges in the event an amendment would "Change the designa-

tions, preferences, limitations, or relative rights of the shares of such class." He asserts that the effect of the purported charter amendment is to "change the relative rights" of the Class C shares in the corporation.

▮ The law is well settled that both the charter of a corporation and the Business Corporation Act become a part of the contract between the shareholders. St. Regis Candies v. Hovas, 1928, 117 Tex. 313, 3 S.W.2d 429; Ainsworth v. Southwestern Drug Corporation, 5th Cir., 95 F.2d 172; General Life Ins. Co. v. Com'r of Internal Revenue, 5th Cir., 137 F.2d 185. One of the cardinal rules of statutory construction is to ascertain the legislative intent and to give effect to every express declaration thereof. Magnolia Petroleum Co. v. Walker, 1935, 125 Tex. 430, 83 S.W.2d 929; Cousins v. Sovereign Camp, W. O. W., 1931, 120 Tex. 107, 35 S.W.2d 696; Citizens' National Bank of Hillsboro v. Graham, 117 Tex. 357, 4 S.W.2d 541. In the case of conflict between a general and a special provision of a statute, the special provision prevails. Nelson v. Texas Employment Commission, Tex.Civ.App., 290 S.W.2d 708, error ref.

The charter of Lee Wolfman, Inc. confers upon the corporation all powers necessary or convenient to further any or all of the purposes for which the corporation is organized. Under the heading "Description of Classes: The preferences, qualifications, limitations, restrictions and the special or relative rights in respect of the shares of each class" it provides in substance that Class A common stock, Class B common stock, and Class C common stock shall be identical in all respects except that the holders of Class A common stock shall have the exclusive right by a vote of the holders of a majority of said Class A common stock to elect three-fifths of the total number of directors of the corporation, and the holders of Class B common stock shall have the right to vote as a class for not more than one-fifth of the total number of directors, and holders of Class C common

stock shall have the right to vote as a class to elect not more than one-fifth of the total number of directors.

Article 4.02, subd. A(3), T.B.C.A., hereinabove set out, is a general provision covering charter amendments. Article 4.03, subd. A of the Act provides that the holders of the outstanding shares of any class entitled to vote upon a proposed amendment by the provisions of the articles of incorporation shall be entitled to vote as a class thereon if the amendment would change the shares of any class, whether with or without par value, into a different number of shares of the same class. It is our view that the charter amendment in question did not change the shares of Class A and Class B stock into a different number of shares of the same class but merely increased the aggregate number of authorized shares of such classes as provided in Article 4.03, subd. B(1) of the Act.

It seems clear that Article 4.03, subd. B (1) of the Texas Business Corporation Act entitles a specific class to vote as a class, if there is to be an increase or decrease in the aggregate number of authorized shares of such class. It seems equally clear that under Article 4.03, subd. B(5) of the Act the holders of the outstanding shares of a specific class shall be entitled to vote as a class if the effect of the amendment is to change the designations, preferences, limitations, or relative rights of the shares of *"such"* class. Under such provisions Class A and Class B shareholders had the right and were required to vote as a class, but Class C shareholders had no such right because the amendment did not increase the aggregate number of authorized shares of Class C or change the designations, preferences, limitations, *or relative rights of the shares of Class C*. Each share of paid up stock of Class C is still entitled to the same dividend and has the same voting power and weight as each paid up share of Class A and Class B stock, although the holders of stock in Classes A and B may control a larger corporate vote. The holders of Class C common stock still

enjoy the peculiar and special right provided in the charter to elect one-fifth of the directors of the corporation, and the holders of Class A and Class B stock will still have the right to elect the number of directors as provided in the original articles of incorporation. *The quality and relative rights of the shares* in each class, as distinguished from the relative position of the classes in the capital structure, have remained identical.

We have not found nor been cited to any Texas case similar to the instant case which is apparently one of novel impression in this State. The case of Hartford Accident & Indemnity Co. v. W. S. Dickey C. Mfg. Co., 1942, 26 Del.Ch. 411, 24 A.2d 315, is, however, somewhat in point and persuasive. In that case Class A stock was increased from 500,000 shares to 1,000,000 shares. There, as here, the other classes were allowed to vote and a two-thirds vote overall was obtained. If the common stock had been voted as a class, the amendment would have failed. The common stockholder sought to enjoin the increase on the ground that, under the class voting provisions of the Delaware statute, the "relative rights" of the common stockholders were adversely affected with respect to their relative position in the capital structure, their right to dividends and their share of the corporate assets upon dissolution. Accordingly, the plaintiff contended that a class vote of two-thirds of the common stock was required by law. The court held:

"If the Legislature had intended to afford protection against the effects of an amendment generally by requiring a class vote of shares in all cases where, by the amendment, the relative position of shares would be disturbed, as by an increase of subordination, apt language easily could have been found. But it is entirely clear that the statute in its mention of relative rights of shares did not refer to the position of shares in the plan of capitalization, but to the quality possessed by the shares; and it is only by a refinement of inter-

pretation that it can be said that a relative position is a relative right.

\* \* \* \* \* \*

"It is, of course, arguable that protection should be given against an increase of burden by requiring an affirmative class vote of a majority of the shares called upon to bear the load; but this is a field of public policy and economy upon which the courts, under the appearance of construction, ought not to trespass."

Article 4.03, subd. B(1) speaks of an increase in the aggregate number of authorized shares of a class, and refers specifically to the class that is entitled to vote as a class as *"such"* class; whereas Article 4.03, subd. B(6) does not refer to an increase in the number of authorized shares but to a change of the shares of a class into a different number of shares, as does also Article 4.03, subd. A, Texas Business Corporation Act. In the instant case the original shares in Classes A and B were not changed into a greater number of shares. There was merely added an additional number of 175 shares to each such class, thereby increasing the aggregate number of authorized shares of each such class. The increase in the authorized number of the shares of Classes A and B gave the holders thereof a preemptive right upon payment thereof to have such shares issued to them. The charter expressly provides that the acceptance of common capital stock of a particular class shall be considered a waiver of any preemptive or preferential rights as to shares of any other or different class of common capital stock.

It is our view that Article 4.03, subd. B(6) merely provides that there cannot be any change in the number of shares of any class, whether by stock split or division or other method without each class voting as a class. This distinction between increasing the aggregate number of shares of a class and changing the shares of a class into a different number of shares of the same class is also recognized in Article 4.01,

Sec. B, T.B.C.A. It provides that a corporation may amend its articles of incorporation so as:

"(4) To increase or decrease the aggregate number of shares of any class which the corporation has authority to issue.

\* \* \* \* \* \*

"(9) To change the shares of any class, whether issued or unissued, and whether with or without par value, into a different number of shares of the same class or into the same or a different number of shares, either with or without par value, of other classes."

In considering all of the foregoing provisions of the Texas Business Corporation Act, we are unable to say that the Trial Court erred in granting the summary judgment.

Affirmed.