RUSS v FEDERAL MOGUL CORPORATION

Docket No. 52541. Submitted June 22, 1981, at Detroit.—Decided January 19, 1982. Leave to appeal applied for.

Arthur A. Russ, Sr., and others brought an action in the Oakland Circuit Court for declaratory and injunctive relief to prevent a vote on a proposed amendment to the articles of incorporation of Federal Mogul Corporation. Under the terms of a 1967 agreement, defendant purchased all of the assets of National Grinding Wheel Company, Inc., in exchange for 120,000 shares. of defendant's Series A preferred stock. The 1967 agreement provided that the holders of preferred stock should have the right to vote on any matter coming before any meeting of defendant's shareholders on the basis of one vote for each share of preferred stock held. The agreement went on to provide that holders of preferred stock are entitled to vote separately as a class when dividends on the preferred stock fell into arrears in an aggregate amount equal to six quarterly dividends. It finally indicated the four specific instances where defendant could not take corporate action without the affirmative vote of a specified majority of holders of outstanding preferred stocks:

(1) The authorization of classes of stock ranking prior to the preferred stock either in the payment of dividends or in the distribution of assets;

(2) Alterations or changes in preferences or limitations with respect to the preferred stock in any material respect prejudicial to the holders thereof;

(3) An increase in the total number of authorized shares of preferred stock; or

(4) The authorization or increase of any class of stock ranking on a parity with the preferred stock.

At the 1980 annual shareholders' meeting, defendant's board of directors proposed that the articles of incorporation be amended by the addition of article VI. The article required the vote as a single class of "noninterested shareholders" resulting in majority approval before a business combination involving

REFERENCE FOR POINTS IN HEADNOTE
19 Am Jur 2d, Corporations § 632.

the corporation may be transacted. Business combinations included mergers, liquidations and other transactions involving at least $1,000,000. "Interested shareholders" may not join in the vote. An interested shareholder was one who holds 10% or more of the outstanding common stock and is a party to the transaction. In their complaint, plaintiffs assert that they should be allowed to vote as a separate class as preferred shareholders on the proposed amendment. The court, Alice L. Gilbert, J., granted judgment for defendant. Plaintiffs appealed. *Held:*

The Michigan Business Corporation Act provides that the holders of outstanding shares of a class of stock may vote as a class upon a proposed amendment to the articles of incorporation when the proposed amendment would increase or decrease the aggregate number of authorized shares of the class or alter or change the powers, preferences or special rights of the shares of the class so as to affect the class adversely. The proposed amendment does nothing to trigger that provision of the statute allowing plaintiffs to vote as a separate class.

Affirmed.

K. N. SANBORN, J., dissented. He would hold that, since plaintiffs' stock has a valuation in excess of $1,000,000, their "special right" to conversion would be "altered or changed" under the amendment, that the change affects the class, and that plaintiffs have the right to vote as a class. He would reverse.

CORPORATIONS — VOTING AS A CLASS — BUSINESS CORPORATION ACT.

The Michigan Business Corporation Act provides that the holders of outstanding shares of a class of stock may vote as a class upon a proposed amendment to the articles of incorporation when the proposed amendment would increase or decrease the aggregate number of authorized shares of the class or alter or change the powers, preferences or special rights of the shares of the class so as to affect the class adversely (MCL 450.1615; MSA 21.200[615]).

*Boltz, Roth & Silver,* for plaintiffs.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Fred W. Freeman* and *Robert P. Ufer),* for defendant.

Before: J. H. Gillis, P.J., and Bashara and K. N. Sanborn,* JJ.

Bashara, J. Plaintiffs, preferred shareholders of defendant corporation, brought this action for declaratory and injunctive relief to prevent a vote on a proposed amendment to the corporate articles of incorporation. They appeal a judgment entered in defendant's favor.

A proper resolution of this dispute requires a recitation of the facts in some detail. Under the terms of a 1967 agreement, defendant purchased all of the assets of National Grinding Wheel Company, Inc., in exchange for 120,000 shares of defendant's Series A preferred stock. Each shareholder of National received a portion equal to his or her percentage of the outstanding capital stock of National. Plaintiffs or their predecessors received 73,026 shares of the Series A preferred stock, presently held by them. The 1967 Agreement provided that the holders of preferred stock should have the right to vote on any matter coming before any meeting of defendant's shareholders on the basis of one vote for each share of preferred stock held. The parties to the agreement intended that: "the holders of Preferred Stock and the holders of Common Stock [vote] together as one class". The agreement provided that holders of preferred stock are entitled to vote separately as a class when dividends on the preferred stock fell into arrears in an aggregate amount equal to six quarterly dividends. It finally indicated the four specific instances where defendant could not take corporate action without the affirmative vote of a specified majority of holders of outstanding preferred stocks:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

(1) The authorization of classes of stock ranking prior to the preferred stock either in the payment of dividends or in the distribution of assets;

(2) Alterations or changes in preferences or limitations with respect to the preferred stock in any material respect prejudicial to the holders thereof;

(3) An increase in the total number of authorized shares of preferred stock; or

(4) The authorization or increase of any class of stock ranking on a parity with the preferred stock.

At the 1980 annual shareholders' meeting, defendant's board of directors proposed that the articles of incorporation be amended by the addition of article VI. Succinctly stated, the article requires the vote as a single class of "noninterested shareholders" resulting in majority approval before a business combination involving the corporation may be transacted. Business combinations include mergers, liquidations and other transactions involving at least $1,000,000. "Interested shareholders" may not join in the vote. An interested shareholder is one who holds 10% or more of the outstanding common stock and is a party to the transaction.

In their complaint, plaintiffs assert that they should be allowed to vote as a separate class as preferred shareholders on the proposed amendment. The trial court disagreed and refused to grant the injunction. Consequently, the vote was held with all shareholders voting as one class and the amendment was overwhelmingly approved. However, it is undisputed that if plaintiffs had been allowed to vote as a separate class as preferred shareholders, the amendment would not have been adopted.

Plaintiffs argue that under the articles of incorporation and the Michigan Business Corporation

Act (act), MCL 450.1101 *et seq.;* MSA 21.200(101) *et seq.,* they were entitled to vote as a separate class. We agree with the trial court's conclusion that this argument is without merit.

Article IIIB5(a)(ii) of the articles provides that the corporation shall not "alter or change the preferences or limitations" regarding the preferred stock without the approval of two-thirds of the outstanding preferred shareholders. Similarly, § 615 of the act, MCL 450.1615; MSA 21.200(615), states, in pertinent part:

"(1) The holders of the outstanding shares of a class may vote as a class upon a proposed amendment, whether or not entitled to vote thereon by the articles of incorporation, if the amendment would increase or decrease the aggregate number of authorized shares of the class, *or alter or change the powers, preferences or special rights of the shares of the class or other classes so as to affect the class adversely."* (Emphasis added.)

Since the amendment would clearly not increase or decrease the number of authorized shares of preferred stock, the statute gives plaintiffs the right to vote as a class only in the event that the amendment would alter the powers, preferences or special rights of the preferred shareholders.

As preferred shareholders, plaintiffs must vote with common shareholders as one class except in certain circumstances enumerated in the articles, or in the 1967 agreement with the shareholders of National. None of those circumstances contravene the statute, *supra.* In those situations, plaintiffs have the right to vote as a class. Preferred shareholders enjoy liquidation preferences, dividend privileges and rights to redeem or convert their shares.

We have reviewed the amendment and plain-

tiffs' rights as preferred shareholders and find that
there exists no alteration of the special privileges
owned by preferred shareholders. Nor did defen-
dant corporation take any action which would
require the affirmative vote of the preferred share-
holders under the four criteria, previously referred
to, from the 1967 agreement. Plaintiffs' assertion
that they would qualify as "interested sharehold-
ers" under the amendment, thereby decreasing
their right to vote, is without merit. Plaintiffs
collectively would own only 3% of the common
outstanding stock in the event they exercised their
rights to conversion. Thus, they are not presently
interested shareholders.

Similarly, plaintiffs' assertion that their conver-
sion rights would be adversely affected is also not
supported by our interpretation of the amend-
ment. Assuming, *arguendo,* that plaintiffs' stock
value is over $1,000,000 and that a conversion
qualifies as a business combination under the
amendment, plaintiffs still do not possess 10% of
the common outstanding stock. Their rights to
conversion therefore remain intact and noninter-
ested voter approval is not required before those
rights may be exercised.

Furthermore, plaintiffs' unqualified and absolute
right of conversion under the 1967 agreement is
specifically recognized in section B(5) of article III
itself, the subject of this controversy. Defendant, in
its brief and at oral argument, recognizes the right
of plaintiffs to conversion under any and all cir-
cumstances.

Both parties contend that there are various
ramifications of the adoption of the amendment.
Defendant argues that the amendment is a protec-
tive device for the good of the majority. Plaintiffs
assert that the management of defendant corpora-

tion pushed the measure through by obtaining proxies in order to prevent any significant change of corporate composition and to guarantee their continuing positions in the business. Assuming that plaintiffs are correct in their assertion that the value of their stock is lessened by the amendment, we do not find the act nor article IIIB5(a)(ii) to be applicable. Any decrease in value of the stock will be across the board and will not affect the preferred shareholders as a class. See *Hartford Accident & Indemnity Co v W S Dickey Clay Manufacturing Co,* 26 Del Ch 411; 24 A2d 315 (1942).[1]

The remaining arguments raised by plaintiffs were not addressed by the trial court. The declaratory judgment is affirmed and the matter is remanded to the trial court for consideration of the remainder of plaintiffs' complaint.

Costs to abide the final outcome.

J. H. GILLIS, P.J., concurred.

K. N. SANBORN, J. *(dissenting).* I respectfully dissent from the majority conclusion that the "powers, preferences or special rights" of the preferred shareholders would not be affected by the amendment. The specific provisions of the amendment affecting conversion rights provide:

---

[1] As defendant indicates, § 615 of the Michigan statute took its language from § 242(c)(2) of the General Corporation Law of the State of Delaware, Del Code Ann Title 8, § 101 *et seq.*

In comment on the predecessor statute, the Delaware Supreme Court stated in *Hartford Accident & Indemnity Co v W S Dickey Clay Manufacturing Co, supra,* 419:

"Where the corporate amendment does no more than to increase the number of shares of the preferred or superior class, the relative position of the subordinated shares is changed in the sense that they are subjected to a greater burden. *The peculiar, or special, quality with which they are endowed, and which serves to distinguish them from shares of another class, remains the same.*" (Emphasis added.)

"A. 1. In addition to any affirmative vote required by law or these Articles of Incorporation, and except as otherwise expressly provided in paragraph B:

\* \* \*

"(c) the issuance or transfer by the Corporation or any Subsidiary (in one transaction or a series of related transactions) of any securities of the Corporation or any Subsidiary to any Interested Shareholder or any Affiliate of any Interested Shareholder in exchange for cash, securities or other property (or a combination thereof) having an aggregate fair market value of $1,000,000 or more \* \* \*

"\* \* \*shall require the affirmative vote or consent of the holders of at least a majority of the outstanding non-Interested shares of Common Stock and Preferred Stock of the Corporation considered for the purposes of this Article as one class \* \* \*."

Thus, the transfer by the corporation of securities (common stock) for securities (preferred stock) to any interested shareholder or their affiliate, in excess of $1,000,000, requires a majority vote of the outstanding noninterested shares of common and preferred stock. Plaintiffs' shares are valued in excess of $1,000,000. If they become interested shareholders or affiliated with interested shareholders and attempt to convert their preferred stock for common stock, a majority of the vote of the noninterested shareholders would be required.

I recognize that plaintiffs' *right* to convert is not denied. However, that right is restricted under the provisions of the amendment. The "special right" of conversion is "altered or changed" so as to adversely affect the class of preferred shareholders. The entire class is affected since only preferred shareholders have conversion rights. Plaintiffs therefore were entitled to vote as a class on the proposed amendment.

Contrary to defendant's contention that some

future right is involved, the proposed amendment would presently alter the conversion rights although the changes may not actually be invoked by an exercise of conversion rights until some future time.

This conclusion is bolstered by § 301 of the Michigan Business Corporation Act, MCL 450.1301; MSA 21.200(301). Subsection (3) provides that "each share shall be equal to every other share of the same class", subject to § 302 (MCL 450.1302; MSA 21.200[302]) which allows division of a class of stock into series. Sections 301 and 302, when read together, require that if a class of stock is not divided into series, each share within the class must possess the same rights and powers, while if the class is divided into series, each share within the series must possess the same rights and powers. In the case at bar, plaintiffs are the holders of Preferred Series A, the series of preferred stock having conversion rights. As shown above, under some circumstances, the proposed amendment could operate to take away plaintiffs' right to vote their shares while leaving the other holders of the same series free to vote their shares. The amendment would have the same effect on holders of common stock, creating an inequality between those common shareholders who were the "beneficial owners" of 10 percent or more of the outstanding common stock and other holders of common stock. Accordingly, since the proposed amendment attempts to create an inequality within the series of preferred stock possessing conversion rights, and within the class of common stock, it violates § 301 and § 302, and is, therefore, invalid.

Defendant in its brief cites the Delaware case of *Providence & Worcester Co v Baker,* 378 A2d 121 (Del, 1977), in an effort to avoid this interpretation

of MBCA §§ 301, 302. Defendant's reliance on this case is misplaced. Delaware's Business Corporation Act contains no counterpart to MBCA § 301. *Providence & Worcester* was decided on the basis of the Delaware counterpart of MBCA § 441 (MCL 450.1441; MSA 21.200[441]), which provides that "unless otherwise provided in the articles of incorporation" each outstanding share is entitled to one vote. Obviously, the amendment involved in the case at bar does not violate § 441, as the inequality in voting rights is to be included in the articles of incorporation. The inequality in voting rights involved in *Providence & Worcester* was valid for the same reason. But § 301 of the Michigan Business Corporation Act requires a different result when an inequality in voting rights *within a class or series* is established by amendment of the articles or otherwise.

Since plaintiffs were entitled to vote as a class, the amendment was defeated. I would reverse the trial court.