VIRGINIA M. DAMON
TRUST, Plaintiff,

v.

NORTH COUNTRY FINANCIAL
CORPORATION, Nominal
Defendant,

and

Dennis Bittner, Bernard A. Bouschor, Ronald G. Ford, Sherry L. Littlejohn, Stanley J. Gerou II, John D. Lindroth, Stephen Madigan, Spencer Shunk, Michael Hendrickson, Glen Tolksdorf, and Wesley Hoffman, Defendants.

No. 2:03–CV–135.

United States District Court,
W.D. Michigan,
Northern Division.

March 22, 2004.

Fredric N. Goldberg, Mika, Meyers, Beckett & Jones, PLC, Grand Rapids, MI, Edward A. Wallace, Wexler Law Firm LLP, Chicago, IL, for Plaintiff.

Raymond W. Henney, Honigman Miller Schwartz and Cohn LLP (Detroit), Richard W. Paige, Honigman Miller Schwartz and Cohn LLP (Detroit), Detroit, MI, Scott L. Mandel, Foster, Swift, Collins & Smith, PC (Lansing), Kenneth T. Brooks, Honigman Miller Schwartz and Cohn LLP (Lansing), Lansing, MI, Keefe A. Brooks, Butzel Long (Bloomfield Hills), Bloomfield Hills, MI, Daniel N. Sharkey, Butzel Long (Detroit), Detroit, MI, Geoffrey A. Fields, Dickinson Wright, PLLC (Grand Rapids), Grand Rapids, MI, Thomas G. McNeill, Dickinson Wright, PLLC (Detroit), Detroit, MI, for Defendants.

## OPINION

QUIST, District Judge.

Plaintiff, the Virginia M. Damon Trust, brings this shareholder derivative action against North Country Financial Corporation ("NCFC") and members of NCFC's board of directors, alleging violations of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and breach of fiduciary duties.[1] Now before the Court is NCFC's Motion to Dismiss Plaintiff's Complaint for failure to comply with Michigan's demand requirement. Also before the Court is a Motion to Dismiss filed by NCFC's directors (the "Directors"). They, like NCFC, seek dismissal of the Complaint for failure to make demand, and also seek dismissal of the Section 14(a) claim for failure to meet the time requirements of the statute of limitations and failure to allege the claim with adequate specificity. In addition, three of the Directors seek dismissal of the Section 14(a) claim against them because they were not board members at the time the proxy statement giving rise to that claim was issued. For the reasons stated below, the Court concludes that Plaintiff has satisfied the demand requirement but will dismiss the Section 14(a) claim with respect to all Defendants because it is barred by the statute of limitations.

---

1. This shareholder's derivative case is related to a consolidated securities fraud class action lawsuit pending in this Court captioned *Charles D. Lanctot v. Sherry L. Littlejohn, Ronald G. Ford and North Country Financial Cor-* *poration,* case number 2:03cv119. The *Lanctot* action asserts claims arising under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934.

## I. *Background*

The Court derives the following factual summary from Plaintiff's Complaint. NCFC is a publicly-held company organized under Michigan law and headquartered in Manistique, Michigan, and whose common stock is listed on the NASDAQ market. NCFC operates as a holding company with nine wholly-owned subsidiaries, including North Country Bank and Trust (the "Bank") and eight non-banking businesses. Plaintiff is and has at all relevant times been a NCFC shareholder. The Complaint names as Defendants NCFC and its present and former directors Dennis Bittner, Bernard A. Bouschor, Ronald G. Ford, Sherry L. Littlejohn, Stanley J. Gerou II, John D. Lindroth, Stephen Madigan, Spencer Shunk, Michael Hendrickson, Glen Tolksdorf, and Wesley Hoffman. Two of these board members, Ford and Littlejohn, were at all relevant times high-level executives at NCFC and the Bank.

This action stems in part from alleged misrepresentations and omissions contained in the proxy statement NCFC issued prior to its May 29, 2000, annual shareholders meeting. Among other things, the proxy statement recommended, and the shareholders ultimately approved, a "Stock Incentive Plan" for the benefit of NCFC's executives. In addition, the Complaint details other facts supposedly indicative of Defendants' misconduct. Beginning in November 2001, media reports emerged suggesting that problems at NCFC had led federal and state regulators to investigate the company and deny its bid to open five new branches. A slowdown in the hotel and tourism industry purportedly hit NCFC especially hard because of NCFC's over-concentration of loans in those industries. Moreover, NCFC allegedly made unusually large loans to its insiders. On November 11, 2002, NCFC's outside auditors resigned while in the midst of planning the audit of NCFC's financial statements for the annual period ending December 31, 2002. Bank regulators continued to examine NCFC and allegedly placed it under special restrictions. Finally, on March 19, 2003, NCFC entered into a cease and desist order with the FDIC and its state counterpart. While neither admitting nor denying that it had participated in unsafe or unsound banking practices or violations of laws, rules, or regulations, NCFC agreed to cease and desist from engaging in a list of such practices and violations. Also, throughout this time, NCFC made periodic filings with the SEC that are now the subject of a separate securities fraud class action lawsuit.

Plaintiff's shareholder derivative Complaint sets forth three counts. Count I (¶¶ 58–64) alleges that all Directors violated Section 14(a) by causing NCFC to file a materially false and misleading proxy statement in connection with the May 29, 2000, annual shareholders meeting. Plaintiff alleges that the proxy statement: failed to disclose violations of various federal and state laws; failed to disclose the material amount of loans concentrated in one industry segment, thereby exposing NCFC to an undue risk of loss; failed to disclose the nature and extent of loans to insiders; and concealed material conflicts of interest between NCFC's board members and NCFC which compromised the board's independence. Plaintiff claims that had the shareholders known of this information, they would not have approved the "Stock Incentive Plan" recommended in the proxy statement that benefited sixty of NCFC's most senior executives, including Directors Ford and Littlejohn.

Count II (¶¶ 65–70) alleges that all Directors breached their fiduciary duties of loyalty, honesty, diligence, and fairness by failing to exercise reasonable and prudent

supervision over NCFC's management, policies, practices, controls, and financial affairs, all of which caused at least $40 million of loss and damage to NCFC. Count III (¶¶ 71–74) alleges that Directors Ford and Littlejohn, who were also NCFC executives, improperly induced NCFC to extend to them lucrative compensation agreements despite their alleged misconduct, resulting in damage to NCFC and entitling it to restitution and/or rescission of their compensation and benefits.

Plaintiff brings this derivative action pursuant to Federal Rule of Civil Procedure 23.1 in the right and for the benefit of NCFC. Plaintiff asserts this Court's jurisdiction over this litigation pursuant to the Securities Exchange Act of 1934, as amended, and 28 U.S.C. § 1337, which gives federal courts original jurisdiction over civil actions arising under federal statutes and regulations governing commerce and antitrust.

## II. *Standard of Review— Motion to Dismiss*

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2 *Moore's Federal Practice,* § 12.34[1][b] (Matthew Bender 3d ed.2003). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

## III. *Discussion*

Defendant NCFC, named as a "nominal" defendant in the Complaint, moves for dismissal of Plaintiff's shareholder derivative action without prejudice because Plaintiff has failed to comply with the mandatory demand process required by Michigan law. The Director Defendants also move to dismiss the entire action without prejudice for this reason. In addition, the Directors seek dismissal of the Section 14(a) claim, first because the applicable statute of limitations has run out, and second because the Complaint fails to plead the allegations with adequate specificity. Finally, three of the Director Defendants seek dismissal of the Section 14(a) claim against them because they were not on NCFC's board at the time the proxy statement giving rise to that claim was issued.

As the following discussion explains, Plaintiff has satisfied the demand requirement so that this action may proceed. However, the statute of limitations period governing the Section 14(a) claim expired before Plaintiff filed the Complaint. The Section 14(a) claim stated in Count I will therefore be dismissed in its entirety, and only Counts II and III survive. Having reached this conclusion, it is not necessary for the Court to address whether the Complaint pleads the Section 14(a) claim with adequate specificity.

### A. Demand

■ Federal Rule of Civil Procedure 23.1 governs shareholder derivative actions

in federal courts. It permits a shareholder of a corporation to bring an action on behalf of that corporation if, among other things, the shareholder has first sought to obtain the desired action from the directors of the corporation. This is known as the demand requirement. The demand process permits the corporation's directors to decide whether alleged injuries to the corporation should be pursued through litigation and to cloak that decision with the protection of the business judgment rule. "Whether to sue or not to sue is ordinarily a matter for the business judgment of directors, just as is the decision that the corporation will make bricks instead of bottles." *In re Consumers Power Co. Derivative Litig.*, 132 F.R.D. 455, 465 (E.D.Mich.1990) (quoting Robert Clark, *Corporate Law* 639 (1986)).

■ In accordance with Rule 23.1's language that a derivative action may proceed despite lack of demand so long as the plaintiff explains "the reasons...for not making the effort," some states excuse demand if it would be futile. Plaintiff believed that a futility exception applies in this case and thus did not make written demand on NCFC's board of directors prior to filing the Complaint. The Complaint acknowledges the lack of demand but justifies this lack by asserting that "a majority of [NCFC's] board is disqualified by misconduct and substantial financial business dealings with [NCFC] which prevents an unprejudiced exercise of judgment so that a request for action would be futile." (Compl.¶3.) Plaintiff further claims that demand would be futile because the board "has not taken any action to toll applicable statutes of limitation for director and officer liability even though there is a possibil-

ity that these statutes will lapse imminently." (*Id.* ¶4.)

■ Plaintiff's effort to take shelter under the futility exception is misplaced because Michigan law allows for no such exception. Rule 23.1 only contemplates the possibility that demand may be excused. This rule does not establish a substantive rule of law. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991). Instead, whether a failure to make demand is excused must be determined under the substantive law of the state of incorporation. *Id.* at 97–98, 111 S.Ct. at 1716–17. *See also McCall v. Scott,* 239 F.3d 808, 815 (6th Cir.2001) (noting *Kamen's* holding that "whether the failure to make a demand is excused must be determined under the substantive law of the state of incorporation....even when derivative claims are brought under federal law"). In this case, NCFC is incorporated under Michigan law; thus, Michigan law applies. Michigan has adopted a universal demand rule, mandating pre-suit demand upon the corporation in all circumstances and providing no possibility for circumvention of this rule by assertions of futility [2]:

> A shareholder may not commence a derivative proceeding until all of the following have occurred:
>
> (a) A written demand has been made upon the corporation to take suitable action.
>
> (b) Ninety days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by

---

**2.** When enacted in 1973, the Michigan Business Corporation Act followed most other states by excusing a demand that would be futile in certain circumstances. However, in

1989, the Michigan legislature amended the statute to provide for mandatory pre-suit de-

waiting for the expiration of the 90–day period.

M.C.L. § 450.1493a.[3]

A commentator explains Michigan's mandatory demand rule in the following manner:

> The 1989 Amendments make demand on the corporation mandatory prior to the initiation of any derivative suit but authorize the filing of suit upon the corporation's rejection of demand, or upon the expiration of ninety days from the date the demand was made, or earlier if irreparable injury to the corporation would result from the ninety-day delay. These clear and universal rules should end the complex litigation over the issues of whether demand is excused and the effect of the board's refusal to bring suit in response to demand. The unconditional demand requirement also will ensure that corporations have some opportunity to take corrective action directly.

Stephen H. Schulman et al., Michigan Corporation Law & Practice § 4.25(c) (2004 Supp.).

■ Although Plaintiff failed to make demand prior to filing the Complaint on July 1, 2003, and that failure may not be excused because of futility, Plaintiff later served a written demand letter on NCFC on September 17, 2003. (Demand Letter, Pl.'s Resp. Br. Ex. A.) The demand letter reiterated Plaintiff's belief that demand was excused for reason of futility but stated that it was being submitted "to obviate

the issue under Michigan Corporate Law § 450.1493a(a) and to begin the running of the 90–day period." (Id.) NCFC acknowledged receipt of this letter when it petitioned the Court to appoint a disinterested person to investigate and assess whether the corporation should pursue the claims listed in the demand letter. NCFC stated: "While it appears that this letter does not comport with the requirements of M.C.L. § 450.1491a, NCFC nonetheless is prepared to accept the letter as a 'written demand...upon the corporation to take suitable action.'" (Br. Supp. Mot. for Appointment of Disinterested Person at 2.)

Plaintiff argues that Defendants' motions to dismiss for lack of pre-suit demand are now moot. Plaintiff's demand letter of September 17, 2003, filed several days after NCFC's motion to dismiss for lack of demand, purports to satisfy the requirement for written demand, and NCFC accepted it as such.[4] The 90 day period under M.C.L. § 450.1493(a) thus began to run on September 17, 2003, and expired on December 16, 2003. Were the Court now to grant Defendants' motions to dismiss without prejudice for lack of demand, Plaintiff could simply refile the Complaint now that the demand requirement has been fully satisfied. All that would result is needless delay. To avoid that outcome, the Court will deny as moot the motions to dismiss with respect to the demand issue.

## B. Section 14(a) Claim: Statute of Limitations[5]

---

mand in all circumstances. M.C.L. § 450.1493a.

**3.** As the statutory language indicates, a plaintiff must serve demand only on the corporation itself, not on individual directors.

**4.** The Court notes that NCFC did not file a reply brief following Plaintiff's response to its motion to dismiss for lack of demand, perhaps reflecting an understanding on NCFC's

part that the September 17, 2003, letter cured the demand defect and marked the beginning of the 90 day time period.

**5.** Section 14(a) of the Securities Exchange Act of 1934 establishes the statutory authority for the SEC to devise rules governing proxy solicitations, providing:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any

■ The statute of limitations period governing Section 14(a) claims is one year from discovery or three years from the occurrence that gives rise to the complaint, whichever is shorter. *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir.1993); *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 362–63 (2d Cir.1990); *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074(JSM), 2003 WL 21058251, at *12 (S.D.N.Y. May 9, 2003). In this case, the Section 14(a) claim arises from alleged misrepresentations and omissions in NCFC's proxy materials distributed in April 2000, while Plaintiff's Complaint was not filed until July 2003—more than three years later and thus beyond the limitations period.

■ Plaintiff posits that the Section 14(a) claim nonetheless is timely because the correct limitations period to apply in this case is not three years, but rather five pursuant to the Sarbanes–Oxley Act of 2002, 28 U.S.C. § 1658(b), which provides:

[A] a private right of action that involves a claim of fraud, deceit, *manipulation*, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of -

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation.

28 U.S.C. § 1658(b) (emphasis added). Plaintiff contends that the Sarbanes–Oxley five year limitations period applies here because proxy violation claims under Section 14(a) involve allegations of "manipulation" as that term is used in the statute. In support of this argument, Plaintiff cites several cases using the word "manipulation" to describe proxy violations.[6] However, the casual uses of "manipulation" in these opinions, all issued prior to Sarbanes–Oxley, do not necessarily push Section 14(a) claims under the Sarbanes–Ox-

---

facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title. 15 U.S.C. § 78n(a).

Pursuant to Section 14(a), the SEC adopted Rule 14a–9, which proscribes false and misleading proxy statements, stating:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy

for the same meeting or subject matter which has become false or misleading.
17 C.F.R. § 240.14a–9(a).

**6.** According to Plaintiff:

The inclusion of the word "manipulation" [in Sarbanes–Oxley] is obviously a reference to the type of manipulation involved in proxy violation claims for which there is a long established prohibition in Section 14(a) jurisprudence. *See, e.g., Grindstaff v. Green*, 133 F.3d 416, 424 (6th Cir.1998) (referring to "proxy manipulations"); *Adams v. Standard Knitting Mills*, 623 F.2d 422, 430 (6th Cir.1980) (referring to proxy law violations as "manipulations" and not in the context of fraud); *Labovitz v. Washington Times Corp.*, 900 F.Supp. 500, 504 (D.D.C.1995) (referring to "manipulation" of proxy context); *In re Trump Hotels Shareholder Derivative Litigation*, 2000 U.S. Dist. LEXIS 13550, at *9 (referring to "manipulation" of proxy machinery by virtue of failure to disclose related party transactions).
(Pl.'s Br. Resp. Mot. Dismiss at 9.)

ley canopy. Those decisions' authors may well have chosen to use a different word had Sarbanes–Oxley existed at the time.

A recent decision from the Southern District of New York held that the traditional three year period governs Section 14(a) claims and the Sarbanes–Oxley five year period does not. *In re Global Crossing, Ltd. Secs. Litig.*, 313 F.Supp.2d 189 (S.D.N.Y.2003). The plaintiffs in that case brought claims under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and Section 14 of the Securities Exchange Act of 1934, 15 U.S.C. § 78n. Anticipating Plaintiff's argument in the instant case, the *Global Crossing* plaintiff's contended that the three year statute of limitations for Section 11 and 14 claims had been superseded by Sarbanes–Oxley and thus a five year period now applies to such claims. The court rejected this argument, stating that "by its plain text, the [Sarbanes–Oxley] amendment does not apply to claims under sections 11 and 14." *Id.* at 196. As the court reasoned,

> The only claims asserted by plaintiffs against these defendants are based on two sections of the securities laws [i.e., Sections 11 and 14] which...do not require any showing of fraudulent intent, but establish liability even for negligent representations. But the Sarbanes–Oxley provision on which plaintiffs rely does not broadly expand the statute of limitations for all actions brought under the securities laws, as it could easily have done, but rather "establishe[s] a distinct federal statute of limitations for certain causes of action arising under the securities laws," *Verizon Maryland Inc. v. RCN Telecom Services, Inc.*, 232 F.Supp.2d 539, 553 n. 6 (D.Md.2002), namely those that "involve[ ] a claim of fraud, deceit, manipulation, or contrivance." 28 U.S.C. § 1658. This description of the covered causes of action mirrors the language of section 10(b) of the Exchange Act, which creates liability for "any person" who "employ[s]...any manipulative or deceptive device or contrivance in contravention of" SEC regulations, 15 U.S.C. § 78j(b), and which thus requires a showing of fraudulent intent, *Herman & MacLean*, 459 U.S. at 382, 103 S.Ct. 683. A cause of action that is based on negligence is not a claim for "fraud, deceit, manipulation, or contrivance," all of which are words connoting deliberate, intentional deception. Therefore, by its plain text, the amendment does not apply to claims under sections 11 and 14.

*Id.* (footnotes omitted). The Court adopts the *Global Crossing* reasoning, which requires dismissal of Plaintiff's Section 14(a) claim for failure to satisfy the statute of limitations.

### C. Section 14(a) Claim: Directors Bittner, Madigan, and Shunk

■ Defendants argue that the Section 14(a) claim (Count I) against Directors Bittner, Madigan, and Shunk must be dismissed because these Directors joined the NCFC Board in 2001, after the issuance of the proxy statement giving rise to the Section 14(a) claim. The Court agrees, and what is more, Plaintiff's response brief fails to address Defendants' argument. For this reason (and in addition to the statute of limitations problem), the Court will dismiss Count I with respect to Bittner, Madigan, and Shunk.

### D. Oral Argument

Oral argument on Defendants' motions to dismiss was scheduled for March 30, 2004. Having reached the conclusions stated in this Opinion based on the parties' briefs, the Court in its discretion determines that oral argument would be neither helpful nor necessary. *See* LCivR 7.2(d); *Lenz v. Erdmann Corp.*, 773 F.2d 62, 70 (6th Cir.1985); *Human Eng'g Inst. v. Comm'r of Internal Revenue*, 629 F.2d

1160, 1162 (6th Cir.1980). Accordingly, the scheduled oral argument will be cancelled.

### IV. *Conclusion*

For the reasons stated above, the Complaint's Section 14(a) claim (Count I) will be dismissed as to all Defendants for failure to comply with the applicable statute of limitations. Because the demand requirement has been satisfied, the claims in Counts II and III survive the motions to dismiss and may proceed.

An Order consistent with this Opinion will follow.