# STATE OF MICHIGAN

# COURT OF APPEALS

PETER KARMANOS, JR., and DANIALLE
KARMANOS, as Custodian for SOCRATES
KARMANOS, LEONIDAS KARMANOS,
ARISTIDES KARMANOS, and SPIROS
KARMANOS, Minors,

        Plaintiffs-Appellants,

v

GURMINDER S. BEDI, WILLIAM O. GRABE,
ROBERT C. PAUL, DANIEL S. FOLLIS, JR.,
COMPUWARE CORPORATION, ELLIOTT
ASSOCIATES, LP, FREDERICK A.
HENDERSON, and THOMA BRAVO, LLC,

        Defendants-Appellees,

and

PROJECT COPPER HOLDINGS, LLC and
PROJECT COPPER MERGER CORP.,

        Defendants.

UNPUBLISHED
November 29, 2018

No. 336577
Wayne Circuit Court
LC No. 15-014148-CB

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Plaintiffs, Peter Karmanos, Jr. (Karmanos) and his minor children, Socrates Karmanos, Leonidas Karmanos, Aristides Karmanos, and Spiros Karmanos, by their custodian Danialle Karmanos (the minor plaintiffs), appeal as of right the order of the trial court granting summary disposition in favor of defendants, Gurminder S. Bedi, Frederick A. Henderson, William O. Grabe, Robert C. Paul, Daniel S. Follis, Jr., Compuware Corporation, Elliott Associates, LP (Elliott), and Thoma Bravo, LLC (Thoma Bravo). Plaintiffs challenge the trial court's order holding that their claims are subject to summary disposition under MCR 2.116(C)(5), (7), and (8). We affirm.

-1-

# I. FACTS

This case arises from the merger and acquisition of Compuware by Thoma Bravo. Plaintiffs allege that Elliott and Thoma Bravo acted in tandem to manipulate an undervaluation of Compuware and thereby enabled Thoma Bravo to buy the company at a price below its true value. Plaintiffs, as former shareholders, argue that they were forced by these events to sell their shares at the devalued price, and therefore brought this action seeking to hold accountable Compuware, certain Board members of Compuware, Elliott, and Thoma Bravo.

By way of background, Compuware was founded by Karmanos and two colleagues in 1973. Compuware's services included testing, development, cloud computing-based collaboration, and performance management software for programs running on mainframe computers and distributed over client server systems. After serving as Compuware's CEO and Executive Chairman of the Board for many years, Karmanos retired in March 2013, agreeing to continue as a consultant to Compuware.

Shortly before Karmanos' retirement, Elliott, a private equity firm, acquired 8.3% of Compuware's common stock. In December 2012, Elliott made an offer to acquire Compuware for $11 per share. After initially rejecting the offer as an undervaluation of its stock, Compuware retained Goldman Sachs Group, Inc. to evaluate the offer. In January 2013, Compuware rejected Elliott's offer but indicated that it was willing to consider other offers. Compuware received offers from various prospective buyers, including Thoma Bravo, ranging from $11.50 to $13 per share. In addition, Karmanos offered to purchase one or more of Compuware's divisions.

Plaintiffs allege that in September 2013, three of Compuware's board members, Bedi, Henderson, and Grabi, met with Elliott's director, Jesse Cohn. According to plaintiffs, at that meeting Cohn told the three board members that dossiers containing private information about them had been compiled and that the information would be embarrassing to them if revealed. Not long after, Compuware's board terminated Karmanos' consulting contract after he publicly criticized Compuware's board for its handling of the potential acquisition by Elliott. Karmanos thereafter sued Compuware for conversion, breach of contract, and unjust enrichment, and was awarded $16.5 million in arbitration. See *Karmanos v Compuware Corp*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2016 (Docket Nos. 327476, 327712). After his consulting contract was terminated, Karmanos sold his shares in Compuware.

In 2013, four of Compuware's board members retired and were replaced by new board members selected by Elliott. In April 2014, Compuware considered a renewed offer by Thoma Bravo to buy the company. After Goldman Sachs reviewed the preliminary financial analysis of Thoma Bravo's purchase offer, Compuware's board announced a merger/acquisition agreement with Thoma Bravo effective December 15, 2014, for a per share price of $10.25, plus further compensation for a spin-off of a division of the company.

Certain representative shareholders initiated a class action suit against Compuware and others, and certain other shareholders intervened to object to the proposed settlement agreement in that lawsuit. The intervening plaintiffs contended that Elliott had engaged in underhanded tactics to compel Compuware's board to agree to the sale to Thoma Bravo at an undervalued price, and that the board members had received secret benefits to do so. The trial court in that

action ultimately approved and entered a settlement agreement and dismissed the challenges of the intervening plaintiffs, and this Court affirmed. See *Adelman v Compuware Corp*, unpublished per curiam opinion of the Court of Appeals, issued December 14, 2017 (Docket No. 333209). Before the settlement agreement was entered by the trial court, the minor plaintiffs in this case opted out of that shareholder derivative suit.

Plaintiffs initiated this case in October 2015, alleging breach of fiduciary duty, breach of the Michigan Uniform Securities Act, fraud, conversion, civil conspiracy, unjust enrichment, money had and received, rescission, and constructive reformation. Defendants moved for summary disposition under MCR 2.116(C)(5), (7), and (8), arguing that plaintiffs lacked standing due to the derivative nature of the lawsuit, that plaintiffs' suit was barred by the earlier shareholder class action, and that plaintiffs had failed to state a claim upon which relief could be granted. The trial court granted defendants summary disposition as to each of plaintiffs' claims under MCR 2.116(C)(5), (7), and (8). Plaintiffs now appeal to this Court, challenging the order of the trial court.

## II. ANALYSIS

### A. STANDING

Plaintiffs first contend that the trial court erred in determining that they lack standing due to the derivative nature of their claims, and therefore erred in granting defendants summary disposition pursuant to MCR 2.116(C)(5). We disagree.

#### 1. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether a party has standing is a legal question that we also review de novo. *Barclae v Zarb*, 300 Mich App 455, 467; 834 NW2d 100 (2013). An assertion that a plaintiff lacks standing can be viewed as a motion for summary disposition under MCR 2.116(C)(5), asserting that the plaintiff lacks capacity to sue. See *Pontiac Police & Fire Retirees v Pontiac No. 2*, 309 Mich App 611, 619; 873 NW2d 783 (2015). In reviewing a motion for summary disposition under MCR 2.116(C)(5), we consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *Aichele v Hodge*, 259 Mich App 146, 152; 673 NW2d 452 (2004).

#### 2. DERIVATIVE OR DIRECT CLAIMS

The term "standing" generally refers to the right of a plaintiff to invoke the power of a trial court to adjudicate a claimed injury. *Federated Ins Co v Oakland Co Road Comm*, 475 Mich 286, 290; 715 NW2dd 846 (2006). "To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 329-330; 506 NW2d 283 (1993). "The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Schools Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted).

Whether a plaintiff has standing to sue in the context of alleged harm experienced by a shareholder of a corporation, however, depends upon whether the alleged harm is direct or derivative. Directors of a corporation owe fiduciary duties to shareholders and are obligated to act in good faith for the benefit of the corporation, and an officer or director of a corporation who acts based on self-interest rather than for the benefit of the corporation breaches a fiduciary duty to the corporation's shareholders. *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 306-307; 600 NW2d 664 (1999). Nonetheless, "a suit to enforce corporate rights or to redress or prevent injury to the corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation and not that of a stockholder, officer or employee." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 474; 666 NW2d 271 (2003), citing *Mich Nat'l Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534 (1989).

Two related exceptions exist, however, which enable a shareholder to sue on his or her own behalf, being (1) when a shareholder "has sustained a loss separate and distinct from that of other stockholders generally," *Christner v Anderson, Nietzke & Co, PC*, 433 Mich 1, 9; 444 NW2d 779 (1989) (quotation marks and citations omitted), and (2) when a shareholder "can show a violation of a duty owed directly to [him or her] that is independent of the corporation." *Belle Isle Grill Corp*, 256 Mich App at 474. An individual shareholder cannot, however, sue on his or her own behalf "merely because the acts complained of resulted in damage both to the corporation and to the individual." *Mich Nat'l Bank*, 178 Mich App at 679-680. Rather, the right of a shareholder to individually sue corporate officers and directors "is limited to cases where the wrong done amounts to a breach of duty owed to the individual personally." *Id*. at 680. "Thus, where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." *Id*.

In this case, plaintiffs alleged that the breach of fiduciary duties by members of Compuware's board of directors, and the fraud allegedly perpetrated by Elliott to effectuate the acquisition of the company, resulted in the artificially low valuation of Compuware stock, which in turn resulted in financial loss to plaintiffs. The alleged incorrect valuation of Compuware's stock, however, would not have been a loss experienced only by plaintiffs, but rather would have been incurred by all shareholders. Plaintiffs thus have not demonstrated that they sustained a loss separate and distinct from that of other shareholders generally, nor have they shown a violation of a duty owed directly to them and not to the corporation generally.[1] We therefore conclude that the trial court did not err in finding plaintiffs' claims to be derivative because the claimed injuries would have arisen from breaches of duties owed to the corporation and to all shareholders. See *Michigan Nat'l Bank*, 178 Mich App at 680.

---

[1] Karmanos suggests that the failure of the Board to consider his offer to purchase a division of Compuware, due to the wrongdoing by Elliott and others, is a direct and not a derivative claim. A review of the amended complaint, however, indicates that Karmanos abandoned efforts to purchase a portion of Compuware after his initial purchase offer.

-4-

We further reject plaintiffs' suggestion that it is necessary to look to Delaware law to determine this question. Plaintiffs encourage that "[i]n the absence of clear Michigan law on matters of corporate law, Michigan courts . . . refer to Delaware law." *Glancy v Taubman Ctrs, Inc*, 373 F3d 656, 674 n 16 (CA 6, 2004). The Michigan case relied upon in *Glancy*, and often cited as support for this proposition, is *Russ v Federal Mogul Corp*, 112 Mich App 449, 455 n 1; 316 NW2d 454 (1982), in which this Court looked to a Delaware decision as instructive when considering a Michigan statute that had been patterned on the language of a Delaware statute. We are doubtful that this Court's willingness in *Russ* to consider Delaware law extends beyond similar narrow circumstances. In any event, because sufficient Michigan case law exists addressing the distinctions between direct and derivative shareholder lawsuits, we decline to look outside Michigan law to resolve this question in this case.

### 3. MCL 450.1492a AND MCL 450.1493a

Because we conclude that the alleged injuries in this case are derivative in nature, we next inquire whether plaintiffs have standing to bring these derivative claims. The trial court determined that plaintiffs did not have standing, reasoning that Karmanos was not a shareholder at the times relevant to the claims in this case, and that the minor plaintiffs had failed to comply with the statutory requirement of submitting a written demand before filing a derivative suit.

Generally, a shareholder derivative suit may be brought by one or more shareholders suing in a representative capacity. MCL 450.1492a. That statutory section provides:

A shareholder may not commence or maintain a derivative proceeding unless the shareholder meets all of the following criteria:

(a) The shareholder was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time.

(b) The shareholder fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

(c) The shareholder continues to be a shareholder until the time of judgment, unless the failure to continue to be a shareholder is the result of corporate action in which the former shareholder did not acquiesce and the derivative proceeding was commenced prior to the termination of the former shareholder's status as a shareholder.

In this case, Karmanos was not a shareholder of the corporation at the time most of the alleged acts occurred and was not a shareholder at the time that the trial court's judgment was entered in December 2016, having sold his shares in Compuware in late 2013. Karmanos therefore lacked standing under MCL 450.1492a to bring a shareholder derivative suit against defendants. With regard to the minor plaintiffs, although the shareholders approved the merger and the merger closed in December of 2014, the shareholder derivative suit did not conclude until the trial court dismissed the case with prejudice in May 2016, and thus this action, commenced on October 20, 2015, began before the termination of the minor plaintiffs' status as

shareholders, resulting in the minor plaintiffs' ability to meet the requirements of MCL 450.1492a.

The trial court found, however, that the minor plaintiffs were precluded from bringing this derivative action because they failed to make a written demand on Compuware in accordance with MCL 450.1493a. That statute provides an additional prerequisite for commencing a shareholder derivative action as follows:

A shareholder may not commence a derivative proceeding until all of the following have occurred:

(a) A written demand has been made upon the corporation to take suitable action.

(b) Ninety days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period. [MCL 450.1493a.]

Here, the minor plaintiffs acknowledge they did not file a demand with Compuware under MCL 450.1493a, but argue that the demand made in the earlier shareholder derivative action fulfilled this requirement and also demonstrated that a further demand would have been futile. MCL 450.1493a, however, does not provide an exception to the demand requirement. Rather, the statute requires a shareholder commencing a derivative proceeding to make a written demand upon the corporation ninety days before bringing the derivative suit "unless the shareholder has earlier been notified that the demand has been rejected by the corporation. . . ." This statutory language does not express an exemption from the requirement of making a demand in cases where a demand would be futile; rather this language provides that waiting 90 days after the demand is made before filing the complaint is not necessary if the demand has been issued and rejected before the 90 days have elapsed.

Historically, however, Michigan courts have recognized that in lieu of a demand on a corporation's board before bringing a shareholder derivative action, a plaintiff may demonstrate that the demand would be futile. In *Futernick v Statler Builders, Inc*, 365 Mich 378, 387; 112 NW2d 458 (1961), a decision pre-dating the 1989 enactment of MCL 450.1493a, our Supreme Court observed that "[t]he minimum requirements for [a shareholder derivative] suit are proof of fraud or abuse of trust in the board of directors of the corporation in failing or refusing to enforce a corporation right or claim, plus demand on said board by the stockholder for such action or proof that the demand would be useless." *Id*.

Thereafter, effective in 1973, our Legislature enacted MCL 450.1491 that, until its repeal in 1989, provided that a complaint initiating a shareholder derivative suit was required to allege "[w]ith particularity the effort of the plaintiff to secure the initiation of the action by the board or the reasons for not making the effort." By contrast, MCL 450.1493a, enacted in 1989, provides that "[a] shareholder may not commence a derivative proceeding until . . . [a] written demand has been made upon the corporation to take suitable action."

However, MCR 3.502(A) provides:

(A) In an action brought by one or more shareholders in an incorporated or unincorporated association because the association has refused or failed to enforce rights which may properly be asserted by it, the complaint shall set forth under oath and with particularity the efforts of the plaintiff to secure from the managing directors or trustees the action the plaintiff desires and the reasons for the failure to obtain such action, or the reasons for not making such an effort.

When construing a statute, our primary task is to discern and give effect to the intent of the Legislature. *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017). We begin this task by examining the language of the statute as the most reliable evidence of the intent of the Legislature. *Id*. If the language is unambiguous, we conclude that the Legislature intended the meaning clearly expressed and we enforce the statute as written. *Id*., citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). We use these same principles of statutory interpretation when interpreting court rules. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011).

When a statute conflicts with a court rule, the court rule controls on matters pertaining to practice and procedure, but the statute prevails on matters of substantive law. *Stenzel v Best Buy Co, Inc*, 320 Mich App 262, 279; 906 NW2d 801 (2017). We determine whether court rules conflict with statutes case by case, recognizing that the Legislature has preeminence regarding substantive issues. *People v Watkins*, 277 Mich App 358, 365; 745 NW2d 149 (2007), citing *McDougall v Schanz*, 461 Mich 15, 36-37; 597 NW2d 148 (1999). Here, the Legislature made demand upon the corporation, and either the expiration of 90 days or the earlier rejection of the demand, prerequisites for a shareholder to qualify to bring a derivative suit in Michigan. Because MCL 450.1493a creates and defines the rights and duties of shareholders bringing a derivative suit, it is a matter of substantive law controlled by the language of the statute.[2]

In this case, the trial court rejected plaintiffs' argument that a demand was not required, concluding that our Legislature's enactment of MCL 450.1493a in 1989 mandates pre-suit demand in all derivative suits, and relying upon *Virginia M Damon Trust v N Country Fin Corp*, 325 F Supp 2d 817 (WD Mich, 2004). We note that *Virginia M Damon Trust* is not dispositive of this issue because federal court decisions are not binding on state courts. *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004); see also *Wormsbacher v Phillip R. Seaver Title Co, Inc*, 284 Mich App 1, 5; 772 NW2d 827 (2009). Where no decision on a point of law has been issued by Michigan's state courts, however, a state court may adopt the reasoning of a federal court's decision if the reasoning is persuasive. *Id*.

In this case, we agree with the federal district court's reasoning in *Virginia M Damon Trust* that the requirement to make a demand under MCL 450.1493a is not excused by futility. In that case, the federal district court for the Western District of Michigan, applying federal procedural law and Michigan substantive law, observed that Federal Rule of Civil Procedure 23.1, applicable to shareholder derivative actions brought in federal court, permits a derivative suit to proceed despite a lack of demand on the corporation if the plaintiff explains that a demand

---

[2] The statute determines *who* may sue (substantive law), not *how* one must sue (procedural).

would be futile. *Virginia M Damon Trust*, 325 F Supp 2d at 821. The federal district court in that case concluded, however, that despite this federal procedural provision, whether a failure to make a demand may be excused for futility is determined by the substantive law of the state of incorporation, and that "[p]laintiff's effort to take shelter under the futility exception is misplaced because Michigan law allows for no such exception." *Id*. The federal district court noted that "Michigan has adopted a universal demand rule, mandating pre-suit demand upon the corporation in all circumstances and providing no possibility for circumvention of this rule by assertions of futility." In a footnote, the federal district court further reasoned:

> When enacted in 1973, the Michigan Business Corporation Act followed most other states by excusing a demand that would be futile in certain circumstances. However, in 1989, the Michigan legislature amended the statute to provide for mandatory pre-suit demand in all circumstances. MCL §450.1493a. [*Virginia M Damon Trust*, 325 F Supp 2d at 821 n 2.]

We similarly conclude that the language of MCL 450.1493a provides for mandatory pre-suit demand in all circumstances, regardless of futility.[3] The minor plaintiffs' failure in this case to comply with MCL 450.1493a by providing a demand to Compuware renders them ineligible to bring this derivative suit under MCL 450.1493a. The trial court therefore properly granted defendants summary disposition under MCR 2.116(C)(5).

## B. PRIOR JUDGMENT

We further hold that the trial court correctly concluded that the minor plaintiffs' derivative suit is precluded under MCR 2.116(C)(7) by the prior judgment in the shareholder derivative suit litigated against Compuware. A motion for summary disposition under MCR 2.116(C)(7) asserts that the claim is barred by "release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different forum, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action." MCR 2.116(C)(7). In considering a motion under MCR 2.116(C)(7), we accept the contents of the complaint as true unless contradicted by the documentation submitted by the moving party, and consider any affidavits, depositions, admissions, or other documentary evidence submitted. *McLean v McElhaney*, 289 Mich App 592, 597; 798 NW2d 29 (2010). If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the Court. *Id*.

---

[3] We note that this Court has at times referred to the futility exception to the demand requirement of MCL 450.1493a post-1989. See *Huron City Company v Parcells*, unpublished per curiam opinion of the Court of Appeals, issued February 8, 2018 (Docket No. 335978) (recognizing that historically Michigan courts have concluded that the demand requirement may be excused when the plaintiff's complaint, in compliance with MCR 3.502(A), pleads that the demand would have been futile). This Court's unpublished opinions are not binding precedent, however, MCR 7.215(C)(1), and we conclude that the clear language of the statute is dispositive of this question.

The minor plaintiffs argue that their claims should be permitted to proceed, despite the prior judgment in the shareholder derivative suit, because they opted out of the shareholder derivative action. See *Adelman*, unpub op at 2. But having opted out of the consolidated shareholder action does not permit the minor plaintiffs to avoid the release and dismissal of the derivative claims in the earlier shareholder action.

Res judicata precludes relitigation of a claim that is predicated on the same underlying transaction as a claim litigated in a prior case. *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013). The doctrine of res judicata was judicially created to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999) (quotation marks and citations omitted). Res judicata operates to bar a second action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). Parties are in privity for purposes of res judicata when they are "so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v Michigan*, 470 Mich 105, 122; 680 NW2d 386 (2004). Res judicata is broadly applied in Michigan, barring not only claims already litigated, but also every claim arising from the same transaction that could have been brought by exercising reasonable diligence. *Dart*, 460 Mich at 586.

In this case, the prior litigation in *Adelman* was a consolidation of derivative actions by Compuware shareholders against the same defendants in this case and others, premised on essentially the same allegations. The ruling in *Adelman* comprised a final judgment, affirming the settlement agreement between Compuware and Thoma Bravo that dismissed, with prejudice, "any and all claims . . . by or on behalf of . . . Compuware." *Adelman*, unpub op at 15-16. The claims in this case are essentially those raised by the intervening shareholders in *Adelman*, and finally resolved by this Court's decision in that case, being the alleged breach of fiduciary duties by Compuware's Board and alleged fraudulent behavior by Elliott.

Further, the minor plaintiffs in this case are in privity with the shareholder plaintiffs of *Adelman*. The claims of the minor plaintiffs in this case and the claims of the shareholder plaintiffs in *Adelman* are derivative as shareholders of Compuware; those claims by their very nature may only be brought to enforce corporate rights or to redress injury to the corporation, and not to redress wrongs to individual shareholders. *Michigan Nat Bank*, 178 Mich App at 679. The Compuware shareholders who brought a derivative action on behalf of Compuware were, of necessity, in privity with the minor plaintiffs, who are other Compuware shareholders now bringing the same action predicated on the same factual basis. The trial court therefore correctly held that the prior judgment precluded the suit in this case.

Because we hold that the trial court did not err in granting defendants summary disposition under MCR 2.116(C)(5) and (7), we decline to reach plaintiffs' additional contention that the trial court erred in granting defendants summary disposition under MCR 2.116(C)(8) for failure to state a claim.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola